[No. 5757-7-III.  Division Three.  November 6, 1984.]

MARY JANE MERCHANT, *Appellant,* v. DAVID L. PETERSON, *Respondent.*

*Michael J. Cronin* and *Winston & Cashatt*, for appellant.

*Barry E. Ryan*, for respondent.

MUNSON, C.J.—Mary Jane Merchant appeals a judgment limiting her conversion damages to the wholesale value of her diamond, and dismissing her consumer protection claim, RCW 19.86. She contends (1) the appropriate measure of damages for conversion was the retail value of the diamond, and (2) Mr. Peterson's conduct in converting the stone constituted a consumer protection violation. We reverse the decision with respect to damages, but affirm the dismissal of the consumer protection claim.

In September 1981, several items were stolen from Mrs. Merchant by her daughter, including a ring with a large center diamond. On September 11, 1981, the daughter sold the center diamond of the ring to Mr. Peterson for $950. Pursuant to their agreement, Mr. Peterson removed the diamond, replaced it with a cubic zirconia, and then mailed the ring to a Reno, Nevada, address as instructed by Mrs. Merchant's daughter. The daughter was given a claim check for the ring. At the time, Mr. Peterson was unaware he was purchasing stolen property.

Meanwhile, Mrs. Merchant discovered the theft and reported it to the police. A police investigation resulted in a determination Mrs. Merchant's daughter had stolen the ring. Mrs. Merchant declined to prosecute her daughter. After recovering the claim check from her daughter, Mrs. Merchant contacted Mr. Peterson and demanded the

return of her ring. Apparently the ring itself was not in Mr. Peterson's possession at this time. However, the center diamond would have been returned to Mrs. Merchant if she reimbursed Mr. Peterson for the amount he paid for the stone; she did not accept this condition.

Later, the ring, which had been unclaimed at the Reno address, was returned to Mr. Peterson. He notified the police. On October 26, 1981, the ring, without the original center stone, was turned over to the police. It was subsequently returned to Mrs. Merchant.

Mr. Peterson was cleared of any criminal wrongdoing after the police investigation. He was advised by a detective he could dispose of the diamond as he chose. In January 1982, Mr. Peterson received a letter from Mrs. Merchant's attorney demanding payment of $5,000 for the diamond. Mr. Peterson sold the stone for $1,000 to a gem dealer in Montana in August 1982.

On October 6, 1982, Mrs. Merchant filed an action claiming Mr. Peterson had converted her diamond and his conduct constituted a consumer protection violation. After conferring with the parties in chambers, the court held Mr. Peterson liable for conversion. This limited the trial to the issue of damages. The court stated the application of the Consumer Protection Act would require no further testimony other than the facts outlined by the court.

Mrs. Merchant testified she valued the diamond at $5,000 and had never contemplated selling the ring. The court published the deposition of Joel W. DeTray, who had appraised the diamond on November 22, 1980, for $5,000. Mr. Peterson testified as to the characteristics of the diamond and certain notes which had been made regarding the stone at the time of purchase. He also testified $950 was a fair amount for the diamond. He bought the stone as a trader in diamonds with the intent of making a profit.

Eugene Wittau, a diamond dealer, testified for the defense as to the value of the stone without having personally examined it. Based upon a description of the diamond, Mr. Wittau concluded the retail value of the stone would be

$3,100 and the wholesale price would be $975. Mr. Wittau questioned the accuracy of Mr. DeTray's appraisal.

By memorandum opinion, the court found Mr. Peterson liable for conversion. However, the court determined his conduct did not involve a consumer protection violation because Mr. Peterson had not acted in an unfair or deceptive manner and there was no trade or commercial relationship between the parties. Finally, the court determined the measure of damages was the wholesale value of the diamond, and not its retail value.

In its findings, conclusions and judgment on March 10, 1983, the court stated:

> The applicable market for loose diamonds is the diamond dealer's market and not the retail value, which represents a Keystone pricing system, reflecting a markup of 2.25, or more, the stone having been purchased by the defendant for $950 and resold for $1,000.00 in the diamond dealer's market, resulting in a fair market value between these "bid" and "ask" prices of $975. The plaintiff should be awarded judgment against the defendant for $975.00, plus interest at the legal rate, from January 20, 1983, the date of the trial herein, together with allowable costs and attorney's fees.

Mrs. Merchant's claim of a consumer protection violation was dismissed. This appeal followed.

■ Mrs. Merchant initially contends the trial court erred in determining the wholesale value of the diamond was the appropriate measure of damages because it did not reflect her loss. Absent willful misconduct, the measure of damages for conversion is the fair market value of the property at the time and place of conversion. *Abbott Corp. v. Warren,* 56 Wn.2d 606, 608, 354 P.2d 926 (1960); *Glaspey v. Prelusky,* 36 Wn.2d 592, 595, 219 P.2d 585 (1950); *Shuck v. Everett Sports Cars, Inc.,* 12 Wn. App. 28, 31, 527 P.2d 1321 (1974); *Dennis v. Southworth,* 2 Wn. App. 115, 124, 467 P.2d 330 (1970). Given the compensatory nature of an award of damages, the meaning of fair market value varies with the context in which the standard is applied. *See John W. McDougall Co. v. Atkins,* 201 Tenn. 589, 301

S.W.2d 335, 337 (1957). *See also* C. McCormick, *Damages* §§ 43, 44 (1935). Nevertheless, fair market value has been generally defined as the value for which the property could have been sold in the course of a voluntary sale between a willing buyer and a willing seller, taking into account the use to which the property is adapted or could reasonably be adapted. *Dillon v. O'Connor,* 68 Wn.2d 184, 186, 412 P.2d 126 (1966); *Donaldson v. Greenwood,* 40 Wn.2d 238, 242 P.2d 1038 (1952).

Faced with the same issue as here, whether fair market value was the wholesale or retail value, the court in *Ashare v. Mirkin, Barre, Saltzstein & Gordon, P.C.,* 106 Misc. 2d 866, 866–67, 435 N.Y.S.2d 438, 439–40 (1980), *modified on other grounds,* 81 A.D.2d 650, 441 N.Y.S.2d 408, *aff'd as modified,* 54 N.Y.2d 891, 429 N.E.2d 425 (1981), stated:

> The function of an award of damages in an action for conversion is to indemnify the injured party by awarding him the value of the converted property. Where the nature of the goods involved is such that they are readily exchanged in the marketplace, the measure of damages is the fair market value of the goods at the time of conversion which is generally the price at which the goods can be replaced in the market. In this case, the evidence established the price at which the converted law books would be purchased and sold in the secondary market by a used book dealer. The significant difference in value between the price the company would pay and the price it would sell these books was attributed to the cost of maintenance, upkeep, storage and profit. The court finds that the market value of the converted books in this case is the cost of replacement by the plaintiff in the used book market and not the lower market at which the used book dealer would purchase the volumes. Plaintiff is not in the used book business and would have to pay the higher cost in order to replace his library.

(Citations omitted.) Here, Mrs. Merchant was not in the diamond business; in fact, she testified she had no intention of selling the ring from which the center diamond had been removed. The stone was an item of Mrs. Merchant's wearing apparel and could not reasonably be characterized as a

wholesale commodity for purposes of valuation.

Further, fair market value necessarily implies not only a willing buyer, but a willing seller. *See Syracuse Eng'g Co. v. Haight,* 110 F.2d 468, 471 (2d Cir. 1940). The wholesale value is not the value a seller in Mrs. Merchant's position *would accept in an ordinary course of a voluntary sale.* In short, the retail value of the diamond fairly represented Mrs. Merchant's loss;[1] it is the proper measure of damages in this case.

Mrs. Merchant next contends her consumer protection claim against Mr. Peterson should not have been dismissed. In order to establish a de facto violation of the Consumer Protection Act, RCW 19.86, the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest. *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980). Conduct has an impact upon public interest if: (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) plaintiff suffers damages brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition. *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 601, 681 P.2d 242 (1984); *Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 762, 649 P.2d 828 (1982); *Anhold v. Daniels, supra* at 46.

Here, there was no evidence Mr. Peterson's conduct was unfair or deceptive, or within the sphere of trade or commerce. The conduct complained of did not involve any form of trade or commercial relationship between these parties.

---

[1]Mr. Peterson's assertion the trial court's award of damages should be affirmed as supported by substantial evidence is not well taken. The appropriate measure of damages, as compared with the amount of damages awarded, involves a legal question reviewable on appeal. *Platts v. Arney,* 50 Wn.2d 42, 43, 309 P.2d 372 (1957). Similarly, his reliance on *State v. Evans,* 96 Wn.2d 119, 634 P.2d 845 (1981) is misplaced. While *Evans* does state at page 125 that replacement cost "is *not* evidence of *market value*", that issue arose in an eminent domain case and related to an evidentiary objection. Replacement cost was not a proper issue.

There is no evidence to suggest Mr. Peterson's conduct impacted upon the public interest or has the potential for repetition. *Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 686 P.2d 465 (1984).

The judgment as to damages is reversed; the case is remanded for a determination of damages, based upon the retail fair market value of the diamond. The dismissal of the consumer protection claim is affirmed. Mr. Peterson's request for terms and compensatory damages is denied; this appeal is not frivolous.

McINTURFF, J., and HETTINGER, J. Pro Tem., concur.