937 So.2d 307 (2006)
Martin MAZZA, Penmar, Inc., and Morden, Corp., Appellants,
v.
ROSE MEDIA GROUP, INC., et al., Appellees.
No. 4D05-2613.
District Court of Appeal of Florida, Fourth District.
September 20, 2006.
*308 Ross Bennett Gampel of Law Offices of Klemick and Gampel, P.A., Miami, Carl H. Hoffman of Hoffman & Hertzig, P.A., Coral Gables, and Steven M. Goldsmith of Steven M. Goldsmith, P.A., Boca Raton, for appellant.
Charles L. Curtis, Fort Lauderdale, and Charles Pettit, Fort Lauderdale, for appellee.
MAY, J.
The plaintiffs appeal summary judgments and judgments on the pleadings on their claims for civil theft, an accounting, dissolution of partnerships, and the establishment of a receivership in favor of various corporate defendants Rose Media Group (Rose), Rose Media Group of Florida, Inc. (Rose Florida), Sorden Corporation (Sorden), Liberty Management, Inc. (Liberty), Pandom of Florida, L.L.C. (Pandom), Verdi Management Group, Inc. (Verdi), Amden Corporation (Amden), and Biscayne Holding Company (Biscayne). At the center of this dispute is the question of whether the plaintiffs' monies were a loan or an investment in certain adult entertainment companies. In essence, the trial court found these corporate defendants were not part of the original oral agreement and were therefore not liable on certain claims. The court also found the civil theft claims barred by unmet legal requisites. We agree and affirm.
The three plaintiffs filed a forty-eight page, twenty-count complaint against nine defendants. The plaintiffs are Martin Mazza, Penmar, Inc., and Morden, Corp. Mazza is the president and sole shareholder of Penmar and Morden. The nine defendants include three individuals and six related business entities. George and Bernice[1] Santoni are owners and controlling persons of Rose, Rose Florida, and Sorden. Robert Wollman is the owner and controlling person of Liberty, Amden, and Biscayne. Rounding out the defendants *309 are Video Outlet I, Inc., Video Outlet II, Inc., Video Outlet III, Inc. (collectively referred to as the Outlets), Pandom, and Verdi, a corporation controlled by Wollman and Santoni.
The complaint listed Mazza as the individual plaintiff, and then alleged "[w]here necessary to do equity and justice, reference to "MAZZA" includes PENMAR and MORDEN." After alleging Rose, Rose Florida and Sorden as business entities controlled by Santoni, the plaintiffs alleged "[w]here necessary to do equity and justice, reference to "SANTONI" includes ROSE, ROSE FLORIDA, SORDEN and PANDOM." For Wollman, the plaintiffs alleged "[w]here necessary to do equity and justice, reference to "WOLLMAN" includes LIBERTY, AMDEN, BISCAYNE and PANDOM."
The plaintiffs alleged that Mazza assisted Santoni and Wollman with setting up several adult videotape rental business locations in Maryland. In November of 1996, Santoni and Wollman approached Mazza about setting up an adult videotape rental business in Broward County, Florida. Mazza alleged that he, Santoni, and Wollman orally agreed to be equal partners in Outlet I, each party contributing money and personal effort.
Outlet I opened on January 28, 1997. Bernice issued share certificates for Outlet I to Penmar, Rose Florida, and Biscayne, representing Mazza's, Santoni's and Wollman's ownership interests, respectively. Outlet II and Outlet III opened, and certificates were issued in a similar fashion, in the following years.
The complaint alleged Santoni and Wollman forced Bernice to appoint a deceased Bahamian lawyer, Bethell, as the sole officer and director of the Outlets in 1998 without providing notice to any of the plaintiffs. Through Bethell, Santoni and Wollman allegedly exercised complete control of the Outlets. They allegedly created a scheme to receive more than their share of the profits from the Outlets and eventually excluded Mazza. Santoni and Wollman allegedly made distributions to Verdi, a management services entity they controlled. Those distributions became so large the Outlets operated at a loss.
Counts one, two, and three were for breach of the oral contract relating to each specific outlet. Counts four and five were for breach of contract implied in fact and implied in law. Counts six, seven, and eight were for fraudulent inducement relating to each specific outlet. Count nine was for conversion, and counts ten and eleven were for breach of fiduciary duty. Counts twelve and thirteen were for civil theft and civil conspiracy, respectively. Counts fourteen, fifteen, and sixteen were derivative claims relating to each specific outlet. Counts seventeen, eighteen, and nineteen requested the dissolution of the individual outlets. And, count twenty sought an accounting, dissolution of partnerships, and establishment of a receivership.
The defendants filed motions for partial summary judgment and motions for judgment on the pleadings on the fifth amended complaint. The trial court granted the defendants' motion for partial summary judgment on the plaintiffs' claims for civil theft against Santoni, Wollman, Rose, Rose Florida, Liberty and Verdi on two theories: (1) the economic loss rule; and (2) because the plaintiffs did not and could not allege specifically identifiable money.
With regard to count twenty, seeking an accounting, dissolution of the partnerships, and establishment of a receivership, the trial court denied the motion for partial summary judgment against Santoni and Wollman, but granted it with respect to all other defendants.
*310 The court also granted the joint motion for judgment on the pleadings as to count twenty, filed by Liberty, Rose, Rose Florida, Pandom, Amden, Sorden and Biscayne. It found the plaintiffs alleged the requisite partnership to support an accounting only with respect to Santoni and Wollman. The court granted Verdi's separately filed motion for judgment on the pleadings on count twenty.
From these judgments, the plaintiffs appeal. We find no error in the trial court's rulings as they relate to Rose, Rose Florida, Liberty, Verdi, Pandom, Amden, Sorden, and Biscayne.[2]
With regard to the civil theft claims against Rose, Rose Florida, Liberty and Verdi, the court correctly held that the plaintiffs' inability to allege and prove the loss of specifically identifiable funds bars these claims. Gersh v. Cofman, 769 So.2d 407, 409 (Fla. 4th DCA 2000). A civil theft claim requires that the funds sought be specifically identifiable funds of the plaintiff. See Fla. Desk, Inc. v. Mitchell Int'l, Inc., 817 So.2d 1059, 1060-61 (Fla. 5th DCA 2002); Escudero v. Hasbun, 689 So.2d 1144, 1147 (Fla. 3d DCA 1997); Capital Partners Inv. Co. v. Am. Inv. Group, 500 So.2d 249, 250 (Fla. 4th DCA 1986). This was an omission that could not be corrected based on the facts alleged.
The court correctly granted the partial motion for summary judgment for Rose, Rose Florida, Liberty, and Verdi's separately filed motion for judgment on the pleadings, on count twenty's request for an accounting, dissolution of the partnerships, and establishment of a receivership. The plaintiffs failed to allege that any of these entities were partners with the plaintiffs or had any contractual relationship that would serve as the basis for the equitable relief requested.
For these reasons, we therefore affirm the judgments in favor of Rose, Rose Florida, Liberty, Verdi, Sorden, Pandom, Amden, and Biscayne.
Wollman, Santoni and the Outlets, however, suggest that they should be considered appellees in this appeal. They argue that because their motions were also granted as to these counts, the plaintiffs waived the right to appeal the judgments as to them when they did not include them in this appeal. They are incorrect. Wollman, Santoni and the Outlets currently have other claims that arise out of the same transaction pending in the trial court. Based upon the prohibition of piecemeal appeals established in Mendez v. West Flagler Family Ass'n, 303 So.2d 1, 5 (Fla.1974), their appeal must await the disposition of the pending claims against them.
Affirmed.
GUNTHER and HAZOURI, JJ., concur.
NOTES
[1] The plaintiffs voluntarily dismissed the complaint against Bernice.
[2] The plaintiffs chose not to address the judgments in favor of Pandom, Amden, Sorden, and Biscayne in their brief. "[P]oints covered by a decree of the trial court will not be considered by an appellate court unless they are properly raised and discussed in the briefs." City of Miami v. Steckloff, 111 So.2d 446, 447 (Fla.1959). We therefore deem any issues regarding the judgments in favor of these defendants abandoned.