994 So.2d 329 (2008)
R & B HOLDING COMPANY, INC., a Florida corporation d/b/a/ Kendall Toyota, Appellant,
v.
CHRISTOPHER ADVERTISING GROUP, INC., a Florida corporation, Appellee.
Nos. 3D06-1560, 3D06-2669.
District Court of Appeal of Florida, Third District.
April 4, 2008.
*330 Greenberg Traurig and Arthur J. England and Julissa Rodriguez and Brigid F. Cech Samole, Miami; Ruden, McClosky, Smith, Schuster & Russell and Peter L. Wechsler, Miami; Ruden, McClosky, Smith, Schuster & Russell and John H. Pelzer, Fort Lauderdale, for appellant.
Wetherington, Klein & Hubbart and Phillip A. Hubbart; Ross and Girten and Lauri Waldman Ross, Miami, for appellee.
Before COPE, CORTIÑAS, and SALTER, JJ.
CORTIÑAS, J.
We consider whether replacement cost is the proper method of valuation for commercial property that was converted over ten years ago where there is no showing of any need for the reproduction of the property and no intention to reproduce it. Because we conclude that replacement cost is not the proper method of valuation in such an instance, we reverse.
Appellant, R & B Holdings, Inc. d/b/a Kendall Toyota ("Kendall Toyota"), appeals a final judgment totaling $5,822,751.26 after a jury trial. Plaintiff, Christopher Advertising Group, Inc. (the "Agency") sued Kendall Toyota for conversion and civil theft of advertising materials and other property belonging to the Agency but kept by Kendall Toyota after their business relationship was terminated. In an earlier appeal, we determined that the proper measure of damages for reproduction of certain converted database materials that were necessary to the Agency to re-commence its business operations was the cost of recreating the database. Christopher Adver. Group, Inc. v. R & B Holding Co., 883 So.2d 867 (Fla. 3d DCA 2004) ("Christopher I"). We also noted that the Agency may be entitled to lost profits if shown with certainty and demonstrated causation. Id. at 875. However, in Christopher I, we were not confronted with, and therefore did not address, the valuation of other unreturned advertising materials ("Unreturned Items") that were not reproduced by the Agency. After remand and a subsequent trial, the Agency was awarded $2,240,368.25 in damages for conversion of the Unreturned Items plus *331 interest in the amount of $2,068,995.67. In addition, the Agency was awarded the principal sum of $220,412.50 in damages for the civil theft claim, which, along with interest, was trebled.
Appellant argues that the Agency was foreclosed from seeking damages for the Unreturned Items under the doctrine of law of the case. The law of the case mandates that "questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." See State v. McBride, 848 So.2d 287, 289 (Fla.2003) (quoting Fla. Dep't of Transp. v. Juliano, 801 So.2d 101, 105 (Fla.2001)); U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061 (Fla.1983); Thornton v. State, 963 So.2d 804 (Fla. 3d DCA 2007). However, because we did not consider whether replacement cost was the proper methodology for valuation of the Unreturned Items, we find that the doctrine of law of the case has no application. Instead, the issue in this second appeal involves the proper method for computing damages related to the Unreturned Items.
The Agency contends that this issue was not preserved for appeal because Appellant's primary basis for excluding evidence on replacement cost for the Unreturned Items was the "law of the case" doctrine. We disagree. Appellant properly preserved the issue of whether or not replacement cost was a proper methodology for valuation of the Unreturned Items by filing an extensive pre-trial motion in limine opposing the application of replacement cost as the basis for damages. The trial court heard argument on this motion and subsequently denied the motion. The very first ground cited in its motion in limine concerned "the proper measure of damages" and, throughout the motion, Kendall Toyota opposed replacement cost as a proper method of damages. As such, we find that the issue was properly preserved. See Fittipaldi USA, Inc. v. Castroneves, 905 So.2d 182, 187 (Fla. 3d DCA 2005). We next examine de novo whether replacement cost was a proper methodology for computing damages concerning the Unreturned Items.
Determining whether a particular methodology is a proper method for computing damages is a question of law and not a jury determination. The appropriate measure of damages, as compared with the amount of damages awarded, involves a legal question reviewable on appeal. See Haworth, Inc. v. Herman Miller, Inc., 162 F.R.D. 286 (W.D.Mich.1995); Merchant v. Peterson, 38 Wash.App. 855, 859, 690 P.2d 1192 (Wash.Ct.App.1984) (the appropriate measure of damages, as compared with the amount of damages awarded, involves a legal question reviewable on appeal); see also Reider v. Thompson, 197 F.2d 158, 161 (5th Cir.1952) (noting that measure of damages is a rule of law and ascertainment of damages is a matter of evidence); St. Louis Sw. Ry. Co. v. Hill Bros., 58 S.W.2d 861, 862 (Tex.Civ. App.1933) ("As to whether damages have been sustained is a question of fact for the jury. The rule to measure these damages is one of law...."); Gulf, C. & S.F. Ry. Co. v. King, 174 S.W. 960, 961 (Tex.Civ. App.1915) ("What is the proper measure of damages is a rule of law, to be applied by the court, as applicable to the facts given in evidence.")
The correct measure of damages in conversion is the fair market value of the property on the date of the conversion, plus interest at the legal rate from the date of conversion until entry of the final judgment. Florida Farm Bureau Casualty Ins. Co. v. Patterson, 611 So.2d 558 (Fla. 1st DCA 1992). However, given the compensatory nature of an award of damages *332 in conversion cases, the meaning of fair market value varies with the context in which the standard is applied. Merchant, 38 Wash.App. at 859, 690 P.2d 1192 (citing John W. McDougall Co. v. Atkins, 201 Tenn. 589, 301 S.W.2d 335, 337 (1957) and C. McCormick, Damages §§ 43, 44 (1935)).
Our holding in Christopher I rested, in part, on the Restatement (Second) of Torts, which provides, in pertinent part:
§ 927 Conversion or Destruction of a Thing or of a Legal Protected Interest in it
(1) When one is entitled to a judgment for the conversion of a chattel or the destruction or impairment of any legally protected interest in land or other thing, he may recover either
(a) the value of the subject matter or of his interest in it at the time and place of the conversion, destruction or impairment ...
(2) His damages also include:
(a) the additional value of a chattel due to additions or improvements made by a converter not in good faith;
(b) the amount of any further pecuniary loss of which the deprivation has been a legal cause;
(c) interest from the time at which the value is fixed; and
(d) compensation for the loss of use not otherwise compensated.
Restatement (Second) of Torts § 927 (1979) (emphasis added). Thus, compensation for pecuniary losses caused by the deprivation of the converted property is contemplated under the Restatement, as is compensation for loss of use not otherwise compensated. However, at the second trial of this case, no testimony was presented by plaintiff which tended to show any losses for the Unreturned Items. Nor was there any testimony that the decade-old advertising materials, for which plaintiff had been previously compensated by clients, was necessary for the Agency's ongoing business operations. Indeed, Paul Christopher, the Agency's principal, testified he had no intention to reproduce the Unreturned Items. Under these facts and in light of the testimony in this case, replacement cost is not the proper measure of damages for determining the value of the Unreturned Items.
Because there are no Florida cases which address the proper method for valuation of the Unreturned Items, we look to other jurisdictions which, under their respective facts, reject replacement cost as the proper methodology for valuation. For example, Long v. Arthur Rubloff & Co., 27 Ill.App.3d 1013, 327 N.E.2d 346 (1975), involved a dispute between a real estate agency and a former employee. The employee argued that following his termination, the real estate agency took possession of files which included leasing data compiled by the employee prior to his employment with the real estate agency. The court found that the leasing data was "not an ordinary object of commerce in the sense that an ascertainable market value could be attributed to it. Furthermore, the nature of the thing converted was not such as to make production or replacement cost a viable alternative." Id. at 355. Noting that the "leasing data allegedly was of a commercial and economic value to [the employee]," the court found:
Given its peculiar nature, we believe that the proper basis for determining compensatory damages is its actual value to [the employee], and that [the employee] was entitled to demonstrate its value to him by such proof as the circumstances admit. But the burden of proving the value of property converted is upon the plaintiff ... and the *333 evidence must afford some reasonable and proper basis for ascertaining value. At a minimum, it must rise to the dignity of proof, and supply such elements or standards for measuring value to enable the trier of fact to exercise its judgment.
Id. (emphasis added) (citations omitted). While the court held that the employee was entitled to recover the value of the leasing data appropriated by the real estate agency, it also held that the mere opinion of the employee as to the reasonable value of the leasing data was insufficient to establish damages. The court further noted that:
[O]ther than [the employee's] opinion, there was absolutely no testimony from which the trier of fact could determine the value of the leasing data to the [employee]. No testimony was offered to show what value the leasing data had been to [the employee] in the past, what commissions, if any, were made by use of the data, or other testimony to show how possession of the [converted property] economically benefited the plaintiff.
Id. (emphasis added).
Similarly, in the instant case, the record is devoid of any evidence adequately demonstrating the value of the Unreturned Items to the Agency. There was no evidence presented concerning the economic consequences, if any, that were directly tied to the Agency's possession of the Unreturned Items prior to conversion.
Because we conclude that replacement cost was not a proper measure of damages for valuation of the Unreturned Items, we reverse the damage award associated with these materials, including interest. We remand for a new trial on plaintiff's conversion claim concerning the Unreturned Items wherein plaintiff bears the burden of proving the value of the property converted.[*]See J.M. Young v. Ethyl Corp., 581 F.2d 715 (8th Cir.1978) (reversing and remanding after holding that the court applied an improper measure of damages under state law to the facts of the case); Atlanta v. Conner, 262 Ga.App. 423, 585 S.E.2d 634 (2003) (vacating award and remanding for recalculation of damages where the trial court used an improper measure of damages that resulted in a windfall to appellee); Orester v. Dayton Rubber Mfg. Co., 228 N.Y. 134, 126 N.E. 510 (1920) (reversing for improper instruction on the measure of damages and remanding for a new trial); Am. Elecs., Inc. v. Neptune Meter Co., 33 A.D.2d 157, 160, 305 N.Y.S.2d 931 (N.Y.App.Div.1969) (reversing on proper method of computing damages and remanding for a new trial with instructions that "[p]laintiffs should have another opportunity to attempt to establish their damage by proper proof" and "[f]ailing so to do plaintiffs are entitled only to nominal damages."); Hilliard v. First Indus., L.P., 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441 (remanding where the jury used an improper method to calculate damages). Such evidence must afford a reasonable basis for determining value in order to allow the trier of fact to exercise its judgment. Long, 327 N.E.2d at 355. If plaintiff cannot meet its burden, it may only be entitled *334 to nominal damages for the Unreturned Items.
With respect to the other issues raised on appeal, we affirm the trebling of $220,412.50 in civil theft damages for the converted items that were replaced as well as the interest award associated with these damages in the amount of $202,525.39. However, we reverse the trebling of the interest award. Greenberg v. Grossman, 683 So.2d 156 (Fla. 3d DCA 1996); Vining v. Martyn, 660 So.2d 1081 (Fla. 4th DCA 1995). We affirm on all other issues on appeal, including the cross-appeal.
Reversed and remanded.
SALTER, J., concurs.

Revised Opinion
COPE, J. (concurring in part and dissenting in part).

I.
I concur that the law of the case doctrine did not preclude the plaintiff-appellee Christopher Advertising Group, Inc. ("the Agency") from asserting a claim for compensation for the value of unreturned advertising materials which were never replaced (the "Unreturned Items").
I agree that this court's prior opinion, Christopher Advertising Group, Inc. v. R&B Holding Co., Inc., 883 So.2d 867 (Fla. 3d DCA 2004) ("Christopher I"), addressed only the question of how to value advertising materials that the Agency had, in fact, replaced.[1] On remand in that appeal was for a new trial on damages, 883 So.2d 876, and the remand instructions were not written in a way which would preclude the plaintiff from asserting a claim for compensation for all of the converted materials, including the Unreturned Items.
I also agree that, under the circumstances of this case, replacement cost is not the correct measure of damages. The Unreturned Items were tapes of audio and video advertising commercials. Over a number of years prior to the 1996 lockout, the Agency had prepared these ads for its clients and the clients had paid for them. The Unreturned Items were the Agency's copies of those audio and video ads.
According to the testimony, radio and television stations do not keep copies of advertisements once they stop being played. Therefore, the Agency could not obtain replacement copies from the radio and television stations that had aired them.
Instead the Agency prepared a budget based on the premise that all of the 1996 and earlier commercials would be remade as if they were brand new commercials, using today's prices. The estimated cost was $4,409,592, and the jury awarded $2,240,368. At no time between 1996 and the retrial in 2006 had the Agency replaced any of the Unreturned Items, and it had no plan to do so. On those facts I agree that the cost of replacement was not the correct measure of damages.

II.
I respectfully disagree with that portion of the opinion which remands for another new trial on damages. On remand from Christopher I, the parties sharply disagreed about how to interpret this court's opinion. Kendall Toyota argued that this court's cost of replacement analysis applied only to the Returned Items because those were the only items which had actually been replaced. The Agency argued *335 that the cost of replacement measure of damages could be applied to the Unreturned Items, even though the unreturned items had never been replaced.
The trial judge expressed skepticism about the Agency's position. The Agency suggested to the trial court that the most prudent approach would be to allow the Agency to submit its entire claim for cost of replacement to the jury, and do so with an interrogatory verdict which would allow the jury to make separate awards for the Returned and Unreturned Items. The Agency explained that in the event of a further appeal to his court, the interrogatory verdict would "give the Court of Appeal ] an opportunity to say okay, we will take the yellow block, take the blue block and take the red block out." R. 3448. The trial court agreed, saying "that resolves what they meant." R. 3449.
Each side understood the other's position on damages. Each side understood that there was a very real debate about whether this court's cost-of-replacement analysis was applicable to the Unreturned Items, that is, items which were never returned and were never replaced. Each side had input into the interrogatory verdict form, which contained an item for conversion damages (with four subparts) and an item for civil theft damages (with four subparts).
It is, of course, the plaintiffs burden in a case to establish proof of damages by competent evidence. See Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am., Inc., 611 So.2d 564 (Fla. 4th DCA 1992). Where the plaintiff establishes the invasion of a right but presents legally insufficient proof of damages, an "award of nominal damages is proper." Beverage Canners, Inc. v. Cott Corp., 372 So.2d 954, 956 (Fla. 3d DCA 1979); see also Greater Coral Springs Realty, Inc. v. Century 21 Real Estate of S. Fla., Inc., 412 So.2d 940, 941 (Fla. 3d DCA 1982); 9 Fla. Jur. 2d Damages §§ 5-6 (2004). In this case a conversion of the Unreturned Items was established. The Agency is entitled to an award of nominal damages, but not a new trial on damages.

III.
In the motion for rehearing the Agency argues that we are obliged to affirm the judgment based on the doctrine of waiver. As a general rule, "[a]n error not raised in the brief is waived," Ramos v. Philip Morris Cos., Inc., 743 So.2d 24, 29 (Fla. 3d DCA 1999), a point I made in a different context in the earlier version of this dissent. The Agency maintains that any point not raised in the initial brief is waived unless the omitted point amounts to fundamental error. The Agency cites the Ramos case and others.[2]
The Agency argues that we should apply a strict rule of waiver in this case. In the initial brief in thus appeal, Kendall Toyota argued that the Agency's recovery was barred by the law of the case doctrine, but did not make an alternative argument that even if there was no law of the case barrier, cost of replacement was nonetheless an incorrect measure of damages. The Agency *336 argues that this omission amounts to a waiver of any challenge to cost of replacement as the measure of damages.
The procedural history is that after oral argument, the panel issued an order to the parties for supplemental briefing of two issues as follows:
The parties are directed to file supplemental briefs, within twenty (20) days of the date of this order, addressing the following questions:
1. What objections or motions, if any, did appellant assert regarding the introduction of evidence of replacement cost as the measure of damages for the unreturned property, so as to preserve this issue for appeal? Arguments and authorities pertaining to the topic of "law of the case" or collateral estoppel need not be re-addressed.
2. Assuming that the issue is preserved or may otherwise be considered here, is replacement cost the proper measure of damages for conversion of the unreturned property?
The parties filed the briefs as ordered. The panel has considered the briefs and has concluded that under the circumstances present here, cost of replacement was the incorrect measure of damages for the Unreturned Items.
The Agency contends that this procedure was impermissible because of the waiver rule cited above. The Agency maintains that absent fundamental error, the court cannot order supplemental briefing or consider the briefs which have been filed. The Agency asserts that use of an incorrect measure of damages does not constitute fundamental error, and for purposes of this discussion I assume that there was no fundamental error.
While the general rule is, as stated above, that an error not raised in the brief is waived, the rule is subject to exceptions. 5 Am. Jur.2d Appellate Review § 515 (20007). An appellate court has the direction to grant a party's motion for leave to file a supplemental brief on a new issue. 4 C.J.S. Appeal and Error § 737 (2007). By the same token, the court has the discretion to order supplemental briefs on an issue raised by the court sua sponte. Id.; see United States Nat'l Bank of Or., Inc. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 445-48, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (Court of Appeals has discretion to raise issue on its own motion and order supplemental briefing); United States v. Mayer, 282 F.3d 1311, 1318-19 (10th Cir. 2002) (Court of Appeals raised issue on its own motion and ordered supplemental briefing); Dorris v. Absher, 179 F.3d 420, 425-26 (6th Cir. 1999) (Court of Appeals raised issue on its own motion). See generally Greenlaw v. United States, ___ U.S. ___, ___, 128 S.Ct. 2559, 2572-2573, 171 L.Ed.2d 399 (2008) (Alito, J, dissenting) (discussing federal appellate practice and collecting cases).
As a matter of practice, this court does from time to time order supplemental briefing of an issue, either on the court's own motion or the motion of a party. For example, the opinion in J.M. v. State, 677 So.2d 890, 891 n. 1 (Fla. 3d DCA 1996), states, "Neither party raised this as an issue on appeal. After the briefs were submitted, the parties were requested by the court sua sponte to address this issue at oral argument." See also Food Lion, L.L.C. v. Henderson, 895 So.2d 1207 (Fla. 5th DCA 2005); Govea v. State, 785 So. 2d 638 (Fla. 5th DCA 2001).
The Agency has cited a number of cases stating the general rule that an issue is waived if not stated in the brief. Those cases do not, however, address a court's power to order supplemental briefing of an issue on the court's own motion or the motion of a party. It appears that an *337 appellate court has the power to order supplemental briefing and to consider the briefs when filed. This amounts to an exception to the waiver rule cited earlier.

IV.
For the stated reasons, I concur that the conversion award should be reversed. The amount be reduced to nominal damages. I would not order a new trial.
NOTES
[*] We are mindful that the legal error in employing replacement cost as the method of damages for the Unreturned Items may have resulted from reliance on our opinion in Christopher I. This likely possibility further compels us to remand for a new trial. We are also not at all surprised that the Agency, appellee herein, did not request a new trial on damages since it was the prevailing party at trial; the fact that the Agency asked us to affirm the final judgment in all respects does not constitute a waiver concerning our ability to remand for a new trial.
[1] In the prior appeal, there was a passing reference to the fact that not all of the property had been returned. That reference was, in its entirety: "When plaintiff's property was finally turned over, one year later, some of it was missing." Appellant's Initial Brief, No. 3D02-3166, at 13.
[2] Among the cases the Agency cites are City of Miami v. Steckloff, 111 So.2d 446, 447 (Fla. 1959); Mazza v. Rose Media Group, Inc., 937 So.2d 307, 310 n. 2 (Fla. 4th DCA 2006); Florida Emergency Physicians-Kang & Associates, M.D., P.A. v. Parker, 800 So.2d 631, 635 (Fla. 5th DCA 2001); Johnson v. State, 795 So.2d 82, 89-90 (Fla. 5th DCA 2000); Raskin v. Community Blood Centers of South Florida, Inc., 699 So.2d 1014, 1016-17 (Fla.4th DCA 1997); F.M.W. Properties, Inc. v. Peoples First Financial Savings & Loan Association, 606 So. 2d 372, 376 (Fla. 1st DCA 1992); J.A.B. Enterprises v. Gibbons, 596 So.2d 1247, 1250 (Fla. 4th DCA 1992); Singer v. Borbua, 497 So.2d 279, 281 (Fla. 3d DCA 1986); and Lynch v. Tennyson, 443 So.2d 1017, 1019 (Fla. 5th DCA 1983).