ROTHENBERG, J.
(dissenting).
This is the second appeal of a judgment determining the financial obligations of the parties in the dissolution of their marriage. Because the trial court on remand failed to give the former husband credit for the $400,000 he advanced to the former wife towards the amounts he owed her, I would reverse the final judgment issued by the trial court. To hold otherwise essentially would treat the $400,000 the former husband paid the former wife to resolve any debts he owed her as a gift. To treat the $400,000 as a gift is contrary to the factual findings of the trial court and contrary to the opinion of this Court which did not disturb this finding. I therefore respectfully dissent.

The First Appeal and This Court’s Reversal of the Final Judgment

Based on the prenuptial agreement entered into by the parties, the trial court resolved the division of the parties’ property and assets; the award of alimony and child support; and the issues of child custody, child visitation, and child rearing. The trial court, however, tried the contested issue of the distribution of the marital debts. The former wife, Reneé, contended the former husband, Dan, owed her nearly $750,000. In contrast, Dan contended Re-neé owed him approximately $310,000. In an attempt to resolve the conflict, and perhaps to avoid a trial, additional attorney’s fees, and a judgment that could have exceeded $400,000, Dan tendered $400,000 to Reneé as settlement of the debt. Reneé rejected the settlement and the case proceeded to trial.
Among the debts Reneé claimed were promissory notes Dan executed in Reneé’s favor during a third party’s lawsuit against Reneé totaling $239,323.04. Dan did not dispute this debt but contended Reneé loaned him the money to protect her and make her judgment proof in the event she was unsuccessful in her lawsuit, and further argued that no prejudgment interest should apply to the amount due under the notes. The trial court determined the notes, which did not provide for interest, were negotiable instruments and thus no prejudgment interest was awardable on the notes.
Dan also claimed that when calculating the parties’ mutual obligations for incorporation into the final judgment, he should receive credit for certain payments he made to Reneé towards satisfying his debts to her during the marriage. Among the payments were three checks to Reneé totaling $422,000, which included the notation “on account” on the checks. The trial court agreed that these payments should be credited towards his debts to Reneé, and because Dan’s debts totaled less than that amount, Reneé must return to Dan the excess he paid to her ($182,676.80). Reneé appealed the final judgment and raised several of the trial court’s findings.
In the opinion issued by this Court, we concluded:
(1) The portion of the judgment returning to the husband $400,000 he had *531 voluntarily and unconditionally paid the wife to reduce a self-acknowledged debt to her is vacated both because (a) that relief was never pled, asserted, claimed in any other fashion, or a subject of the trial ...; and (b) cannot be substantively justified.
(2) The award of a portion of the Guardian Ad Litem fees against the wife is reversed for a new hearing, as unsupported by any evidence of what those services were or their claimed value.
(3) Contrary to the ruling below, the ex-wife was entitled to prejudgment interest on the fixed obligations owed her by the husband.
The judgment is otherwise affirmed.
Rotta v. Rotta, 34 So.3d 107, 107-08 (Fla. 3d DCA 2010) (emphasis added) (citations omitted).
On remand, when amending and reissuing its final judgment, the trial court completely removed $400,000 of the $422,000 credit it initially awarded Dan based on the money he had already paid Reneé towards his debts to her, and awarded Reneé prejudgment interest on the promissory notes from the date the notes were due without taking into account the dates on which the payments totaling $422,000 were made. Dan filed the instant appeal.

The Instant Appeal

We review the trial court’s final judgment de novo because this appeal involves a pure issue of law — whether the legal principles dictated by this Court’s first opinion in this case were correctly applied to the facts. See, e.g., Bakerman v. Bombay Co., 961 So.2d 259, 261 (Fla.2007) (stating that a question of law is “subject to the de novo standard of review”); R & B Holding Co. v. Christopher Adver. Grp., Inc., 994 So.2d 329, 331 (Fla. 3d DCA 2008) (reviewing a question of law de novo). After an appeal, the trial court must apply the legal principles announced in this Court’s opinion to the facts of the case, without additional discretion or reinterpretation. Hearns v. State, 54 So.3d 500, 501-02 (Fla. 3d DCA 2010). The law of the case established in this Court’s earlier written opinion binds the parties. Valsecchi v. Proprietors Ins. Co., 502 So.2d 1310, 1311 (Fla. 3d DCA 1987). All of the conclusions of the appellate court, whether explicit or implicit, become the law of the case after the court issues its opinion. Dade Cnty. Classroom Teachers’ Ass’n v. Rubin, 238 So.2d 284, 289 (Fla.1970); see also Milton v. Keith, 503 So.2d 1312, 1313-14 (Fla. 3d DCA 1987) (stating that a trial court’s order affirmed by an appellate court becomes the order of the appellate court); Westinghouse Elec. Corp. v. Carol Fla. Corp., 154 So.2d 339, 339 (Fla. 3d DCA 1963) (holding that a party is not permitted a second appeal on a question determined on a first appeal); Valsecchi, 502 So.2d at 1311 (holding that the law of the case applies to all issues that were, or could have been, raised on the previous appeal).
Although we cannot revisit this Court’s earlier legal conclusions in this second appeal because they are the law of the case, the law of the case does not direct us, or the trial court, to ignore facts in the record that were not affected by the first appeal. With limited exceptions not applicable here, the law of the case doctrine requires that “points of law adjudicated in a prior appeal are binding” in later stages of the same case. Bueno v. Bueno de Khawly, 677 So.2d 3, 4 (Fla. 3d DCA 1996) (emphasis added) (quoting Jacobson v. Humana Med. Plan, Inc., 636 So.2d 120, 121 (Fla. 3d DCA 1994)); see also R & B Holding Co., 994 So.2d at 330; accord Strazzulla v. Hendrick, 177 So.2d 1, 3 (Fla.1965). The law of the case does not affect the trial court’s factual findings that are based on credibility determinations it made after re *532 view of competent, substantial evidence. See Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976) (“Subject to the appellate court’s right to reject ‘inherently incredible and improbable testimony or evidence,’ it is not the prerogative of an appellate court, upon a de novo consideration of the record, to substitute its judgment for that of the trial court.”) (footnote omitted); Bare Necessities, Inc. v. Estrada, 902 So.2d 184, 185 (Fla. 3d DCA 2005) (noting that a trial court’s resolution of conflicting evidence must be affirmed on appeal if supported by competent substantial evidence). Thus, as detailed below, it was error for the trial court to disregard and fail to give Dan credit for a payment that Dan had paid and Reneé accepted.
This Court’s earlier opinion did not reverse the trial court’s findings of fact, which were based on credibility determinations regarding the various debts between the parties. In the initial final judgment of dissolution, the trial court made findings regarding who owed whom, and the amount of such debts. The trial court’s findings were based on evidence submitted to the trial court, including live testimony. The trial court found that Dan executed eight promissory notes totaling $239,323.04 in favor of Reneé, for which he owed her that amount; and based on the terms of the notes, they became owing and due one year after they were executed. After reviewing competent and substantial evidence, the trial court rejected, as not credible, Reneé’s claim that Dan owed her an additional $416,367.25 pursuant to oral promises. The trial court found that the $212,000 Dan gave Reneé for a residence in which she lived before the marriage was a gift. The trial court also determined that the $79,340 Dan paid towards legal fees in Reneé’s litigation with a third party, which began before the marriage, was a loan and ordered repayment. The trial court also determined that the $7,523.09 being held in a bank account belonged to Dan and the $4,513.09 in credit card charges Reneé made on Dan’s credit card, and paid by Dan, were to be reimbursed to him by Reneé.
The trial court additionally made findings of fact regarding payments Dan made to Reneé before trial in their dissolution proceedings. The petition for dissolution of marriage was filed in September, 2007. All three payments addressed by the trial court’s final judgment were made before the trial, during which testimony and evidence regarding the previously-made payments was presented to the trial court for its evaluation as the finder of fact. In February, 2007, Dan paid Reneé $10,000, via a check with the notation “on account,” which the trial court found was in response to Reneé’s request for funds Dan owed her. In September, 2007, after the petition was filed, Dan paid Reneé $12,000 via a check with an “on account” notation, which Reneé cashed. The trial court resolved an issue of credibility and found this payment was “made toward the loans at issue” between Dan and Reneé, because the trial court determined Reneé “failed to provide any alternate explanation” other than to dispute it was towards the loans. In November, 2007, Dan paid Reneé $400,000, which was delivered by a check to Reneé that, like the previous two payments, included the notation “on account.” The trial court found that the “credible and uncontroverted evidence” established that Dan delivered the check, but Reneé contended Dan owed her in excess of $700,000. Like the payments of $12,000 and $10,000, Reneé did not dispute that she accepted the $400,000 payment from Dan.
The trial court determined that the $422,000 should be credited towards Dan’s debt to Reneé pursuant to the promissory notes, because it accepted Dan’s admission *533 he owed the amount stated in the notes and that Dan had executed the promissory notes. Because the $422,000 exceeded the total amount of promissory notes, $239,323.04, the trial court ordered Reneé to reimburse Dan for the excess.[1]
In the first appeal, this Court did not disturb any of the trial court’s findings regarding who owed whom, and how much. The only determinations reversed were: (1) the refund to Dan of $182,676.80, because he “voluntarily and unconditionally paid [the $400,000 to Reneé] to reduce a self-acknowledged debt to her,” and he never pled or asserted a claim for return of the excess; (2) the award of a portion of the guardian ad litem fees, because the award was not supported by any evidence; and (3) the determination prejudgment interest was unavailable on fixed obligations Dan owed to Reneé. Rotta, 34 So.3d at 107-08. Each is a legal finding that does not alter the trial court’s factual determinations regarding whether the evidence presented at trial supported a debt or payment towards a debt by either party. Consequently, the trial court’s factual findings still apply at this stage of the proceedings because they were unaffected by the first appeal.
As a result, I would find that the trial court erred on remand when it interpreted the mandate as requiring the trial court to disregard the $400,000 payment altogether. Based on this Court’s opinion, the previous determination was that Dan was not entitled to a refund because he never pled or asserted such relief. This Court reversed the legal finding regarding set-off, depriving Dan of the excess, but did not affect the factual finding that the $400,000 was paid towards Dan’s debt on the promissory notes and should therefore be taken into account when determining his debt to Reneé. Thus, I would find that the trial court erred in not giving Dan credit for the $400,000 he paid Reneé towards his debt to her and in reassessing the $239,323.04 he owed her and had already paid her for the eight promissory notes. Giving Dan no credit for the $400,000 he paid to Reneé grants Reneé a complete windfall of an additional $239,323.04, and this error was further compounded when the trial court awarded Reneé prejudgment interest on the debt without taking into consideration when the debt was satisfied. Pursuant to this Court’s earlier opinion, Reneé is only entitled to prejudgment interest from the date the obligations were fixed — when the notes became due — through the time they were paid, November 30, 2007.
I would therefore reverse the final judgment issued by the trial court with instructions to award Dan credit for the $400,000 he advanced Reneé towards his debts to her. Because the $400,000 Dan paid to Reneé satisfied the only debts found by the trial court, debts undisturbed by this Court on appeal and equaling $239,323.04 for the promissory notes executed by Dan in favor of Reneé, plus the prejudgment interest, Dan should owe Renee nothing on his pre-dissolution debts to her. I note, however, that the drafter of the original opinion disagrees with my interpretation of his opinion, and I respect that as the drafter, his intent controls, as does the fact that my view is not the majority’s view. I would, however, reverse the final judgment for the reasons articulated in this dissent.

. There were three payments ($10,000, $12,000, and $400,000) made with the “on account” notation, but the dispute in this appeal relates only to the effect of the $400,000 payment.