[Decided January 30, 1888.]

## I. R. DAWSON, WALKER L. BEAN, A. M. CANNON, B. H. BENNETT, J. J. L. PEEL, G. PALMTAG, S. WILSON, V. DESSERT, JOHN N. SQUIER, AND J. D. SHERWOOD *v.* ISAAC BAUM.

1. Judgment—Effect—Res Adjudicata—Trespass—Code, Section 350.—Where plaintiff's goods were attached as the debtor's property, and in the special statutory action provided for by section 350 of the Code, which plaintiff brought against the sheriff and the attaching creditor, he obtained a judgment for the return of the goods, such judgment is a bar to another action against the sheriff, the attaching creditor, and the sureties on the indemnity bond, to recover damages for the trespass.

2. Attachment—Torts by Sheriff—Sureties—Liabilities of.—The sureties on an indemnity bond, preliminary to the issue of an attachment, are not liable for a tort committed by the sheriff making the levy, as by a willful conversion of the goods taken to his own use, unless such act was contemplated or advised by them or unless they assisted in or directed it.

3. Same—Same—Malice.—Malice cannot be presumed as against the sureties on such bonds, who are strangers to the controversies, and not interested in the result, though they signed it without previously examining into the merits of the case.

4. New Trial—Motion for—Practice—Statement of Grounds.—A motion for a new trial, not specifically stating the grounds relied on save in the language in the statute setting out the various causes therefor, will be denied. (See Stats. of Wash., 1888, p. 30.—Rep.) Jones, C. J., dissenting.

Error to the District Court holding terms at Spokane Falls. Fourth District.

The plaintiff, in his complaint, alleged that he was a reputable merchant, doing a profitable business, and was in possession of and used in business a stock of merchandise worth $10,000, which one Oscar Bates, at the instigation of and assisted by the defendants, unlawfully, maliciously, and oppressively took from plaintiff's possession, and carried the same away, and so detained the same, to his damage in the sum of $10,000. As special damage, he claimed $700 paid as attorney's fees, and $300 for other necessary expenses to regain possession of his property. He also claimed, as special damages, the profits of three (3) days' sales, while said stock was detained, and also for diminution of the value of the stock caused by the careless and negligent handling of the same by said defendant while in his possession. The defendants, except I. R. Dawson, who was not served, answered by denying all material allegations in the complaint, and affirmatively pleaded that said Oscar Bates, as sheriff, under a writ of attachment duly issued, in a suit by defendant Dawson against Sheeline Bros. upon a money demand, and directed to the sheriff, took into his possession the property described in the complaint as the property of Sheeline Bros., and that the sheriff held the property under the writ for two days, when the plaintiff Baum filed an affidavit claiming the property as his, and also a bond for the trial of the rights of property as prescribed by section 350 of the Code, whereupon the sheriff delivered the property to the plaintiff Baum; that prior to the issuance of the writ of attachment the defendant Dawson, as principal, and all the other defendants, as sureties, executed a bond, as required by the attachment law, and that the taking and detention of said property by said sheriff was under said writ, and that none of the defendants aided or assisted therein; that after the plaintiff Baum had delivered his affidavit and bond, under section 350 of the Code, the sheriff approved the bond and returned the same, with the affidavit, to the clerk of the District Court, as required by section 352 of the Code, and that said cause was placed upon the trial docket and a trial had, resulting in favor of the claim-

ant and a judgment for the return of the property, which was claimed as a bar to any recovery of damages for the acts of the sheriff under the writ of attachment. The plaintiff replied by denials. A trial was had, and verdict and judgment in favor of plaintiff, from which the defendants appealed.

*Messrs. Houghton, Graves & Jones,* and *Messrs. Nash & Kinnaird,* for Plaintiffs in Error.

The Code of this Territory provides a remedy for a party whose property has been levied upon under a writ against a third party, by giving to the sheriff an affidavit and bond, thus enabling him to obtain immediate return of the property, and having the question of title determined at the next term of court. (Secs. 350 to 354.) Plaintiff availed himself of that remedy, and prosecuted it to final judgment. Having voluntarily chosen to adopt that remedy, and having obtained judgment under it, has he not exhausted all his remedies? He had the right to sue for the recovery of the property and damages under chapter 10 (secs. 142 to 152) of the Code; or he could avail himself of the common law remedies of trover or trespass, and in one action determine his title to the property and his damages for the seizure and detention. The law does not favor multiplicity of suits, and we contend that sections 350 to 354, constituting a new remedy, were intended to give to the party availing himself thereof all the rights to which he is entitled; and that having exhausted that remedy, he cannot follow it up with additional remedies. The sureties (defendants herein) are not chargeable with the malice or wantonness of the sheriff or the plaintiff in the attachment suit or of his agent. In *Lovejoy* v. *Murray,* 3 Wall. 10, action against sureties on an indemnity bond, Justice MILLER says: "This (the giving of the bond) made them responsible for the continuance of the wrongful possession. . . . . in other words, for all the *real* damages which plaintiff sustained." (*Nightingale* v. *Scannell,* 18 Cal. 326; 2 Addison on Torts, sec. 844; 1 Wade on Attachment, sec. 316; *Pollock* v. *Gantt,* 44 Am. Rep. 519.)

*Messrs. Turner & Forster,* and *Mr. S. C. Hyde,* for the Defendant in Error.

The motion for a new trial contained no sufficient specification of the grounds of the motion, as required by section 281 of the Code. Section 281 of our Code is the same as subdivision 4 of section 649 of the California Code, and there it has been settled by repeated decisions of the Supreme Court of that state that errors of law relied upon on motions for a new trial must be clearly specified. (Hayne on New Trial and Appeal, secs. 149 and 150; *McCullogh* v. *Clark,* 41 Cal. 299; *Newell* v. *Desmond,* 63 Cal. 242.) It is no bar to the action that the plaintiff has recovered his property as provided by law. (Hilliard on Rem. for Torts, 589; Drake on Attachment, sec. 196.) All persons who direct or request another to commit a trespass are liable as co-trespassers. So the bonds of indemnity in this case given to the sheriff were a virtual request to him to levy upon Baum's goods, and the sureties are equally liable with the principal. (Brandt on Suretyship, sec. 423; *Herring* v. *Hoppock,* 15 N. Y. 409; *Lovejoy* v. *Murray,* 3 Wall. 1; Freeman on Execution, sec. 273; *Malloy* v. *Bennett,* 15 Fed. Rep. 371.)

Mr. Justice LANGFORD delivered the opinion of the court.

This case is one in which the defendant in error brought his action against the plaintiff in error as follows:

"In the District Court of Washington Territory, and for the Fourth Judicial District thereof, holding terms at Cheney, for Spokane county.

"*Isaac Baum, plaintiff,* v. *I. R. Dawson, Walker L. Bean, A. M. Cannon, B. H. Bennett, J. J. L. Peel, Gothard Palmtag, Samuel Wilson, Victor Dessert, John N. Squier,* and *J. D. Sherwood, defendants.*

### COMPLAINT.

"Isaac Baum, the plaintiff in the above entitled action, complains of the defendant therein, and for cause of action alleges:

"1. That for a long time before, and at the time of the

committing of the injuries by the said defendants herein-
after mentioned, plaintiff had been and was engaged in busi-
ness as a retail merchant, at the town of Colville, in the
county of Stevens, in Washington Territory. That during
said time said plaintiff was doing a prosperous and profit-
able business, and had a good standing, reputation, and
credit as a merchant.

"2. That at the time hereinafter mentioned, plaintiff had
on hand and in his possession in his storehouse in said town
of Colville, goods, wares, and merchandise to the aggregate
value of ten thousand dollars; said stock of goods, wares, and
merchandise consisting of dry goods, groceries, hardware,
queensware, boots and shoes, ready-made clothing, and
other articles usually kept for sale in a retail store, and was
then and there engaged in selling the same.

"3. That on the 26th day of April A. D. 1886, at said town
of Colville, one Oscar Bates, at the instigation and request
of the defendants, and being by them then and there em-
ployed thereto, and assisted therein, unlawfully, wrongfully,
maliciously, and oppressively took from the possession of
the plaintiff and carried away said stock of goods, wares, and
merchandise, then and there being in plaintiff's storehouse,
as aforesaid, consisting of dry goods, groceries, hardware,
queensware, boots and shoes, ready-made clothing, and
other articles usually kept for sale in a retail store, as afore-
said, the property of plaintiff, and of the aggregate value of
ten thousand dollars, as aforesaid, and unlawfully, mali-
ciously, wrongfully, and oppressively detained the same from
the plaintiff, to his damage in the sum of ten thousand dol-
lars.

"4. That in consequence and by reason of such taking
and detention of said stock of goods, wares, and merchan-
dise, the plaintiff was put to great trouble and expense to
procure the return of the same, and was compelled to pay,
and did pay, the sum of seven hundred dollars as attorney's
fees, and also the sum of three hundred dollars for other
expenses necessarily incurred by him in order to regain the
possession of said property.

"5. That by reason of said taking and detention of said goods, wares, and merchandise, as aforesaid, plaintiff lost the profits of three (3) days' sales from said stock, to his damage to the sum of one hundred dollars, and was further damaged in the sum of one hundred dollars by the careless and negligent handling of said goods, wares, and merchandise during the time they were so detained from plaintiff, as aforesaid.

"6. That in consequence of said taking and detention of plaintiff's said stock of goods, wares, and merchandise, as aforesaid, plaintiff was greatly damaged in his credit and good standing as a merchant, to wit: in the sum of ten thousand dollars. For which several sums, aggregating the sum of eleven thousand two hundred dollars, plaintiff demands judgment against said defendants, together with his costs and disbursements in this behalf laid out and expended.

"Turner & Forster,

"Attorneys for Plaintiff."

The first point we will dispose of is defendant's motion for a new trial. There was no other or more definite ground stated in this motion for a new trial than the language of the statute which states the several general causes for a new trial. It is a general principle of practice that an appellate court will not consider any error which was not definitely brought to the attention of the court below, so that the trial court may know with some degree of certainty as to the error complained of.

A general statement that the court erred in instructions to the jury, or in admitting evidence, and the like, does not point out the particular instruction or the particular evidence upon which the moving party relies, and does not give the trial court any notice of how it may correct the error. To permit the trial court to be thus entrapped into error would be trifling with justice.

In the case of *Bradshaw* v. *The Territory of Washington,* 3 Wash. 265, the ruling that the motion for a new trial was too indefinite to support error was made, but the motion for new trial is not definitely set out in the report;

but we have examined the motion in that case, and it is similar to the one in this case, and has like indefiniteness. We approve of this ruling, and think that no error can be assigned to the ruling of the court on that motion.

We shall therefore examine the other assignments only.

The assignments 2, 3, 4, 5, 6, 7, 8, 10, 11, 25, 26, 37, 38, principally refer to one point of law, which can be best understood by the statement of the case.

As will be seen by reference to the complaint, this action is in the nature of trespass for entering into the store of the plaintiff and seizing upon his property therein.

Oscar Bates was sheriff, and, at the suit of Dawson against Sheeline, had a writ of attachment. This plaintiff was suspected of not holding the goods in the store in his own right, but that said goods were the goods of the attachment debtor. Accordingly, to induce the sheriff to levy upon these goods, these defendants executed an indemnity bond to the sheriff. Thus induced, the sheriff made the levy of attachment upon these goods, held them two days, when the plaintiff, by a statutory action, which is instituted by affidavit and bond and entitled as this, plaintiff being there the only plaintiff, and this defendant Dawson and the sheriff being the only defendants.

This action was tried between said parties, and this plaintiff recovered a judgment for the property, and by virtue of said judgment, the property which he had possessed from the commencement thereof was adjudged the property of said plaintiff, who is this plaintiff.

These defendants plead this former judgment in bar of this action. The above mentioned assignments all go to the sufficiency of this plea. Is the plea a good plea in bar? The plaintiff for the illegal levy had his choice of remedies for the wrong.

He had his action of trespass against all of these defendants and the sheriff, jointly or severally. He had his action against the sheriff and his bondsmen by virtue of the statute and the bond. He had his action in trover, to recover the value of the property. He had his action of

assumpsit, to recover the value of the property. He had his action in the nature of replevin, to recover the property and damages for detention. He had his statutory action for the recovery of the property.

Thus, for this wrong, the plaintiff had the election of six different kinds of action, and his remedy might have been different in each.

· Now, having chosen his remedy, and secured full satisfaction according to his choice, he now sues again for the same wrong, because he thinks he has made an unwise choice. If, after recovery, and being satisfied in one action, can he, for the same wrong, continue to sue in each of the other five forms, because there is some peculiar benefit in each that is not in the other? Had he sued in the action wherein he could have recovered the property and the damages for detention, and have left out the damages by this good will, or mistake, could he bring another action for the damages he omitted? To choose to sue as he did was to voluntarily omit the damages for detention. To sue as he did, instead of in trespass, was omitting, voluntarily, exemplary damages, and this omission is of the same effect as if in trespass he had omitted to claim vindictive damages.

When the law gives a choice of remedies for a wrong, the plaintiff, by choosing the benefits of one form, waives the benefit of other forms; upon the same principle, that if, in an action for damages for a wrong, he omits some fact which would increase the damages, he loses it.

It is for the interest of the public that litigation shall not be had about one wrong by many actions. It is wrong for a plaintiff to split up a contract or wrong into many parts, and thus harass and put to costs a defendant, when the plaintiff can recover, if he chooses, all in one action. One action, judgment, and satisfaction for one wrong are all the law allows. For these reasons we think the plea in bar should have been sustained. (Bigelow on Estoppel, p. 515; Freeman on Judgments, secs. 241, 249, 243, 316; 1 Chitty on Pleading, 16th ed., p. 234.)

This is directly decided in several cases in Texas and

Georgia and Pennsylvania, under a similar statute. (Freeman on Executions, sec. 277; *Howeth* v. *Mills,* 19 Tex. 296; *Mosely* v. *Gainer,* 10 Tex. 573; *Moore* v. *Gammel,* 13 Tex. 120; *Bigelow* v. *Smith,* 23 Ga. 318; *Washington* v. *Doe,* 9 Ga. 23; *Bain* v. *Lyle,* 68 Penn. St. 60.)

Assignments of error following may be grouped, as going to the same point.

Errors 9 and 39. These go to the point as to whether these defendants, by merely signing the indemnity bond, are responsible for torts committed by the sheriff, for willful conversion of goods, personally, and contrary to his duty as a sheriff making the levy.

If the defendants assisted or directed this wrong, or by the signing of the bond such a wrong was advised, or could have been contemplated by the signers of the bond, then they ought to be liable for such a tort; but otherwise not. Had the sheriff burned the store, would the defendants have been liable therefor, merely because they requested him to make a lawful levy? The sheriff and his bondsmen are alone responsible for tortious acts which did not come within the scope of defendants' advice.

Other assignments go to the court's giving general instruction as to what would constitute malice, and justify exemplary damages, and refusing to instruct the jury that merely signing the bond did not constitute malice. The evidence does not disclose any other evidence of malice than the fact that defendants knew that the attachment was against Sheeline, and was about to be levied upon the goods in the possession of and claimed by plaintiff.

The defendants, except Dawson, signed at the request of Dawson's agent.

The goods were presumed to be the goods of the possessor, until the contrary appeared. It was like signing a replevin bond; if plaintiff should lose that kind of an action, would it be presumed that he and his bondsmen were malicious? If a defendant wins a civil suit, this raises no presumption that the plaintiff or his bondsmen are malicious. Something more must be affirmatively shown to prove a

malicious prosecution. Is it the duty of every man who signs a replevin or indemnity bond at the mere request of another to examine into the merits of the action, and, if he does not, is malice to be imputed to him? I think not.

The plaintiff is supposed to know something about his case, and take legal advice before he commences the action; and if he fails to take these precautions, malice might, or might not, be imputed. That a man should, out of malice, levy upon the goods of a stranger is so very extraordinary and unreasonable that it would take strong evidence to establish it. Much more extraordinary would it be for a man to act maliciously, who could have no hope of gain if the wrong were successful, and who did not have any part in commencing the action, and no pretended or supposed knowledge of the controversy or the merits thereof.

I think the evidence did not justify a general instruction of what malice in some cases might be, and refusal to instruct that the facts in this case did not constitute or prove malice.

There are several other assignments which it is unnecessary to comment upon in the attitude this case has assumed.

Let the judgment be reversed.

ALLYN, J., concurred.

JONES, C. J., dissented, not being able to agree to the reasoning by which the result was reached.