[No. 8572. Department Two. March 2, 1910.]

## The State of Washington, *Respondent*, v. F. W. D. Mays, *Appellant*.[1]

Appeal—Review—Errors Considered—Correct Decision Based on Erroneous Ground. Upon an assignment of error in rejecting an offer of proof, which was not broad enough in some particulars, error of the court in rejecting the offer upon another specific ground will be reviewed on appeal, where any change in the form of the offer would have been unavailing to appellant.

Libel and Slander—Criminal Prosecution—Defenses—Truth of Charge—Common Law. At common law, which prevails in this state except as modified by statute, the truth of a libelous charge was not a defense to a criminal prosecution.

Same — Statutes — Evidence of Truth—Admissibility. Under Rem. & Bal. Code, § 2157, providing that the truth of a criminal libel may be given in evidence, and the accused shall be acquitted if the jury find that the matter charged was a crime punishable by fine or imprisonment, and was true, and published with good motives and justifiable ends, the truth is available as a defense only where such a crime was charged with good motives, etc.; and the right to give evidence of the truth is limited to such cases.

Same—"Defamation"—Falsity of Charge. "Defamation" as used in Rem. & Bal. Code, § 2777, defining criminal libel does not imply that the defamatory words are false, as the statute is simply declaratory of the common law in which the truth of the charge was no defense.

[1]Reported in 107 Pac. 363.

Appeal from a judgment of the superior court for Garfield county, Miller, J., entered October 24, 1908, upon a trial and conviction of criminal libel.   Affirmed.

*Cain & Hurspool,* for appellant.

*E. V. Kuykendall,* for respondent.

RUDKIN, C. J.—The appellant was convicted of the crime of libel, and prosecutes this appeal from the judgment and sentence of the court.   The prosecution was based on the following article written by the appellant and published with his knowledge and consent in a newspaper, of which one Fitzmaurice was publisher and proprietor:

"A NOTORIOUS STOCK RUSTLER.

"One H. C. Benbow recently made a savage attack on this paper through the columns of his paper at Dayton, and wrote defamatory letters over the state to injure our business.

"We regret to be forced in self-defense to inform the public of the unsavory reputation said Benbow had at one time in Garfield county. It is known to all the oldtimers that stockrustling became so flagrant at one time in this section that a vigilance committee was organized to break it up and Mr. Benbow was accused of being a ringleader in the band of rustlers.   Some of them fled the country and friends intervened to save Benbow, as he was young then.

"It illy becomes him to assail others, with his past record. He accused Hon. J. H. Schively of robbing an insurance company, and asked the people to vote against him and Sam Nichols, both of whom led their tickets, owing to the advocacy of them by this paper."

At the trial of the case the appellant offered to prove,

"That the said H. C. Benbow at one time had an unsavory reputation in said Garfield county.   That it is known to all the oldtimers that stock rustling became so flagrant at one time in this section that a vigilance committee was organized to break it up, and said Benbow was accused of being a ringleader in the band of rustlers.   That some of them fled the country and that friends intervened to save Benbow as he was young then."

To this offer the respondent objected, and the objection was sustained, for the reason that the publication complained of did not charge the prosecuting witness Benbow with a crime punishable by fine or imprisonment under the law of this state. The ruling of the court excluding the proffered testimony is the basis of the principal assignment of error on this appeal. The respondent contends that the ruling of the court below should be sustained for the following reasons: First, because the offer of proof did not extend to all the libelous matter contained in the publication; second, because the offer was not preceded by proof that the publication was made with good motives and for justifiable ends; and third, because it was incumbent on the appellant to prove not only that the prosecuting witness had been accused of being a ringleader in a band of stock rustlers, but that he was such in fact. Doubtless the offer was not complete in itself, and was not broad enough to constitute a defense to the charge, but it would be unfair to the accused to sustain the ruling of the court below on that ground. Had the court sustained the objection on any of the grounds now suggested by the respondent, the appellant might have conformed to the ruling of the court by modifying or changing his offer; but when the court rejected the proffered testimony on the broad ground that the prosecuting witness was not charged with a crime punishable by a fine or imprisonment under the law, any change in the form of the offer would be unavailing. We therefore deem it our duty to determine the correctness of the ruling complained of on the ground on which it was based in the court below.

Whatever differences of opinion may have heretofore existed, it is now very generally conceded that the truth of the libelous charge was no defense to a criminal prosecution at common law. 18 Am. & Eng. Ency. Law (2d ed.), p. 1068; 25 Cyc. 573; 4 Blackstone, Commentaries, p. 150; 2 Wharton, Criminal Law (10th ed.), § 1643. And the com-

mon law prevails in this state except as modified by statute.

Rem. & Bal. Code, § 2157 provides as follows:

"In prosecution for libel, the truth thereof may be given in evidence to the jury, and if it appear to them that the matter charged as libelous was a crime punishable by a fine or imprisonment, and was true, and that the same was published with good motives and justifiable ends, the defendant shall be acquitted."

This section is not entirely free from ambiguity. It might be inferred from the first part of the section that the truth of the libelous charge may always be given in evidence, but the latter part shows very clearly that the truth of the charge is only available as a defense where the matter charged as libelous was a crime punishable by fine or imprisonment, and the same was true, and was published with good motives and for justifiable ends.

The law of libel underwent many radical changes in the early part of the nineteenth century. Some of the earlier state constitutions provided that in all prosecutions for libel the truth might be given in evidence, and if it appeared that the matter charged as libelous was true and was published with good motives and for justifiable ends, the defendant should be acquitted. Others limited the right to prove the truth of the charge to prosecutions for publications respecting the official conduct of the men in public capacity, or the qualification of those who were candidates for the suffrages of the people, or where the matter published was proper for public information. A reference to many of these constitutional provisions will be found in the note to *People v. Croswell*, 3 Johns Cas. (N. Y.) 337. Our attention has not been directed to any constitutional or statutory provision like the above, but it seems clear to us that the right to give evidence of the truth of a libelous charge is limited to cases where the charge was a crime punishable by fine or imprisonment, and it is conceded that the case at bar does not fall within that class.

Counsel for appellant ingeniously argue that our statute defines libel as "the defamation of a person made public," etc., (Rem. & Bal. Code, § 2777) ; and that "defamation" is defined as, "a false publication calculated to bring the person defamed into disrepute." The word "defamation" as here used does not necessarily imply that the defamatory words are false. Our statutory definition of libel is simply declaratory of the common law. Blackstone defines libels as "malicious defamations of any person, and especially as magistrate, made public by either printing, writing, signs, or pictures, in order to provoke him to wrath or expose him to the public hatred, contempt, and ridicule." 4 Blackstone, Commentaries, p. 150. The same author says that the truth is no defense to a charge of this kind; so that, if counsel for appellant are correct, we have the anomaly that libel is a false charge, but the prosecution is not required to prove its falsity, and the defense it not permitted to prove its truth. Since this case arose, the libel law has been changed by the new criminal code and the question now presented will perhaps not arise again, so that a further discussion would be unprofitable.

We will add in conclusion, however, that we can conceive of no justification for the publication of such an article under the circumstances disclosed by the record. As said by a learned writer on criminal law:

"It is the interest of the community that old offenses in most cases should be forgotten. There are few men, no matter how valuable their services ultimately to society, who might not have been ruined, if at the turning point of their lives they had been visited by the publication of youthful wrongs done by them. Hence he who maliciously explores the past life of an intended victim, with the purpose of crushing him by bringing to public notice some act of shame, long past, it may be long repented of and condoned, may deserve a severer punishment than one who invents a false charge, easily disproved. In the former case, the injury inflicted by the libeler is far more destructive than in the latter. Even should the truth, under the statutes, be admissible, yet unless

on public grounds it ought to have been published, it is no defense. And when the statutory condition is that the publication be with good motives and for good ends, if these requisites be not shown, the truth should be rejected." Wharton, Criminal Law (9th ed.), § 1645.

The judgment of the court below is affirmed.

DUNBAR, PARKER, MOUNT, and CROW, JJ., concur.