[No. 79172-4. En Banc.]
Argued May 27, 2008. Decided November 26, 2008.

MARK POTTER, *on Behalf of Himself and a Class*, *Appellant*, v. THE WASHINGTON STATE PATROL, *Respondent*.

---

[16] CP at 109 (TCSC art. IV, § 10.1, tbl. I n.4).

68

70

72

*Adam J. Berger* (of *Schroeter Goldmark & Bender*), for appellant.

*Robert M. McKenna, Attorney General, Jay D. Geck, Deputy Solicitor General,* and *Shannon E. Inglis, Assistant,* for respondent.

¶1 FAIRHURST, J. — In this case, we are asked to decide whether the process for redeeming an impounded vehicle as set forth in RCW 46.55.120 is the exclusive remedy for a person whose vehicle is unlawfully impounded. We hold RCW 46.55.120 is not exclusive and, therefore, a person whose vehicle is unlawfully impounded may bring a conversion action against the authority that authorized the impoundment.

## I. STATEMENT OF THE CASE

¶2 Mark Potter was cited for driving while license suspended (DWLS) on two separate occasions in two different vehicles. On both occasions, the Washington State Patrol (WSP) impounded the vehicles despite Potter's request for a properly licensed family member to take control of the vehicles. In both instances, a hold was placed on the vehicles for 90 days. Potter claims he was unable to pay the requisite towing and storage fees to redeem his vehicles.

Potter did not timely challenge the impoundments, and the towing company auctioned his vehicles.

¶3 Potter's vehicles were impounded according to the procedures outlined in chapter 46.55 RCW. RCW 46.55-.113(1) authorizes a law enforcement officer to impound a vehicle when, among other things, the driver is arrested for DWLS.[1] For a DWLS violation, the vehicle may be impounded for a period of 30 days.[2] RCW 46.55.120(1)(a).[3] Once impounded, a vehicle "may be redeemed only under the . . . circumstances" delineated in RCW 46.55.120. RCW 46.55.120(1). An owner may redeem a vehicle by paying all applicable towing and storage fees. RCW 46.55.120(1)(e). If the vehicle was improperly impounded, the owner can avoid paying the towing and storage fees by requesting and prevailing at a hearing. RCW 46.55.120(2)(b).

¶4 Numerous fees and costs are associated with an impoundment. From the date of impoundment, the vehicle owner has five days to supply the towing company with a security deposit or the company may auction off the vehicle as an abandoned vehicle. RCW 46.55.120(1)(b). To redeem a vehicle, the owner must pay "the costs of towing, storage, or other services rendered during the course of towing, removing, impounding, or storing" the vehicle. RCW 46-.55.120(1)(e). Additionally, if the vehicle was impounded for a DWLS violation and the driver was the owner, the

---

[1] RCW 46.55.113 has been amended a number of times since the impoundments in question, but the amendments are irrelevant to our current analysis. *See* Laws of 2007, ch. 86, § 1, ch. 242, § 1; Laws of 2005, ch. 390, § 5; Laws of 2003, ch. 177, § 1, ch. 178, § 1. Thus, we refer to the current version of the statute.

[2] If a vehicle operator was convicted for DWLS at least once in the previous five years, the impoundment period may be increased to 60 days and up to 90 days for two or more previous offenses. RCW 46.55.120(1)(a).

[3] RCW 46.55.120 was amended twice after the impoundments in question occurred. The 2003 amendment added a section regarding the release of a vehicle and included several technical edits. Laws of 2003, ch. 177, § 2. The 2004 amendment removed the statutory minimum of $50 per day for loss of use damages. Laws of 2004, ch. 250, § 1. These amendments are irrelevant to our analysis. Consequently, we refer to the current form of the statute.

owner must prove "any penalties, fines, or forfeitures owed by him or her have been satisfied." *Id.*

¶5 The owner of an impounded vehicle has a right to request a hearing. RCW 46.55.120(2)(b). For state-ordered impoundments, the impoundment hearing is held at the local district court. *Id.* The district court has jurisdiction to resolve "issues involving all impoundments." *Id.* The person requesting the hearing may produce evidence to prove the impropriety of the impoundment. RCW 46.55.120(3)(b). The court has the authority to determine "whether the impoundment was proper, whether the towing or storage fees charged were in compliance with the posted rates, and who is responsible for payment of the fees." RCW 46.55.120(3)(c).

¶6 If the court determines the impoundment was proper, the party requesting the hearing is liable for all fees and costs associated with the impoundment. RCW 46.55-.120(3)(d). If the impoundment was improper, the agency authorizing the impoundment is liable for all fees, costs, and reasonable damages for the loss of use of the vehicle during the impound period. RCW 46.55.120(3)(e). However, where the impoundment arose from a DWLS violation, the government agency authorizing the impoundment is not liable for loss of use damages if the officer directing the impoundment "relied in good faith and without gross negligence on the records of the department in ascertaining that the operator of the vehicle had a suspended or revoked driver's license." *Id.*; *In re 1992 Honda Accord*, 117 Wn. App. 510, 521, 71 P.3d 226 (2003).

¶7 A vehicle owner waives the right to an impound hearing unless he or she requests the hearing within 10 days of the towing company giving notice to the owner of the opportunity to redeem the vehicle. RCW 46.55-.120(2)(a), (b). The request must be in writing and filed with the appropriate court at least five days before the date of a vehicle's auction. RCW 46.55.120(2)(b). If the vehicle owner fails to act, the towing company may auction the vehicle.

RCW 46.55.130(1).[4] Surplus proceeds from the auction are placed in the state motor vehicle fund, and the former vehicle owner may file a claim for the surplus for up to one year. RCW 46.55.130(2)(h). In the instant case, Potter failed to pay the required fees or request an impound hearing.

¶8 After Potter's vehicles were impounded according to the procedures above, this court declared the WSP's impound policy, former WAC 204-96-010 (2000), invalid because the policy exceeded the agency's statutory authority by designating impoundment as mandatory, rather than permissive. *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 159, 60 P.3d 53 (2002). Subsequently, Potter filed this class action lawsuit against the WSP, alleging the WSP unlawfully converted his vehicles by impounding them pursuant to the mandatory impound policy struck down in *Impoundment of Chevrolet*.[5] The trial court certified the class as all

> [r]egistered owners of motor vehicles that were impounded by the Washington State Patrol solely for Driving While License Suspended violations during the period of June 1, 2001 through December 19, 2002, who have not resorted to any other judicial or administrative method to challenge the legitimacy of the impound of their vehicle.[6]

Clerk's Papers at 13. Potter and the WSP filed cross motions for summary judgment. The trial court granted the WSP's motion, concluding the WSP had the authority to impound the vehicles and, therefore, its exercise of authority was "privileged and renders it not liable for conversion." Verbatim Report of Proceedings at 42. Potter appealed. We granted direct review.

---

[4] RCW 46.55.130 was amended twice since the impoundments in question, but the amendments are irrelevant to our current analysis. *See* LAWS OF 2006, ch. 28, § 1; LAWS OF 2002, ch. 279, § 12. Thus, we refer to the current version of the statute.

[5] Potter also claimed the impoundments were negligent and a violation of article I, section 7 of the state constitution. These claims were dismissed and are not the subject of this appeal.

[6] Potter and the class he represents are referred to hereinafter as "Potter."

¶9 We reversed the trial court, holding summary judgment was inappropriate because the WSP's conduct was not privileged. *Potter v. Wash. State Patrol*, 161 Wn.2d 335, 342, 166 P.3d 684 (2007). We did not address whether RCW 46.55.120 bars Potter's conversion claim. *Id.* at 339 n.3. The WSP moved for reconsideration, which we granted, to review only whether RCW 46.55.120 bars Potter's claim for conversion.

## II. ISSUE

Whether RCW 46.55.120 bars Potter's conversion claim for the wrongful impoundments of his vehicles.

## III. ANALYSIS

¶10 The WSP asks this court to strip Potter of his ability to bring a conversion claim against the WSP for the unlawful impoundments of his vehicles. In essence, we are asked to recognize the abrogation of the deeply ingrained common law concept of conversion because of the presence of a statutory procedure for redeeming an impounded vehicle. We decline to recognize the abrogation of a common law cause of action in the absence of either an explicit statement or clear evidence of the legislature's intent to abrogate the common law.

¶11 In general, our state is governed by the common law to the extent the common law is not inconsistent with constitutional, federal, or state law. RCW 4.04.010.[7] The legislature has the power to supersede, abrogate, or modify the common law. *See State v. Estill*, 50 Wn.2d 331, 334-35, 311 P.2d 667 (1957); *State v. Mays*, 57 Wash. 540, 542, 107 P. 363 (1910). However, we are hesitant to recognize an

---

[7] RCW 4.04.010 provides:

The common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state.

abrogation or derogation from the common law absent clear evidence of the legislature's intent to deviate from the common law. "It is a well-established principle of statutory construction that '[t]he common law . . . ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.'" *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va.*, 464 U.S. 30, 35-36, 104 S. Ct. 304, 78 L. Ed. 2d 29 (1983) (alterations in original) (quoting *Fairfax's Devisee v. Hunter's Lessee*, 11 U.S. (7 Cranch) 603, 623, 3 L. Ed. 453 (1812)). A law abrogates the common law when "the provisions of a . . . statute are so inconsistent with and repugnant to the prior common law that both cannot simultaneously be in force." *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973). A statute in derogation of the common law "must be strictly construed and no intent to change that law will be found, unless it appears with clarity."[8] *McNeal v. Allen*, 95 Wn.2d 265, 269, 621 P.2d 1285 (1980).

¶12 In this case, we are asked to determine whether a statute regarding redemption procedures for impounded cars abrogates the common law tort claim of conversion. After considering the common law claim of conversion, the plain language of the redemption statute, and the legislative intent behind the redemption statute, we hold the common law claim of conversion was not abrogated by the legislature because the legislature did not intend for the redemption procedures set forth in RCW 46.55.120 to be the exclusive remedy for unlawful impoundments.

---

[8] "[D]erogation" is "[t]he partial repeal or abrogation of a law by a later act that limits its scope or impairs its utility and force." BLACK'S LAW DICTIONARY 476 (8th ed. 2004). To "[a]brogate" is "[t]o abolish (a law or custom) by formal or authoritative action; to annul or repeal." *Id.* at 7. The WSP argues conversion is no longer a valid cause of action for unlawful impoundments, which would be an abrogation of the common law. We refer to case law dealing with both derogations and abrogations of the common law because in both instances the legislature's intent to deviate from the common law must be clear and explicit. "'[I]t must not be presumed that the legislature intended to make any innovation on the common law without clearly manifesting such intent.'" *In re Parentage of L.B.*, 155 Wn.2d 679, 695 n.11, 122 P.3d 161 (2005) (quoting *Green Mountain Sch. Dist. No. 103 v. Durkee*, 56 Wn.2d 154, 161, 351 P.2d 525 (1960)).

A. Standard of review

 ¶13 Summary judgment rulings are reviewed de novo. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Wilson Court*, 134 Wn.2d at 698. Questions of law are reviewed de novo. *Id.* The reviewing court may affirm the trial court on "any theory established in the pleadings and supported by proof," even where the trial court did not rely on the theory. *Id.*

¶14 In this case, we are reviewing a question of law not addressed by the trial court's summary judgment ruling. We are asked to determine whether a redemption statute is the exclusive remedy available when a vehicle is unlawfully impounded. This is a question of law, which we review de novo.

B. Conversion is a common law cause of action available to plaintiffs whose vehicles are unlawfully impounded

 ¶15 A cause of action in conversion is deeply ingrained in this state's jurisprudence, having been recognized since territorial times. *See, e.g., United States v. Kelly*, 3 Wash. Terr. 421, 429, 17 P. 878 (1888); *Lyen v. Bond*, 3 Wash. Terr. 407, 410, 19 P. 35 (1888); *Dawson v. Baum*, 3 Wash. Terr. 464, 472, 19 P. 46 (1888). Conversion is a derivative of the common law action of trover, "which redressed an interference with one's interest in a chattel that was substantial enough to justify compelling the wrongdoer to pay for it as in a forced sale." *Iglesias v. United States*, 848 F.2d 362, 364 (2d Cir. 1988). Under our modern jurisprudence, " '[c]onversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession.' " *In re Marriage of Langham*, 153 Wn.2d 553, 564, 106 P.3d 212 (2005) (quot-

ing *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 80 Wn. App. 655, 674-75, 910 P.2d 1308 (1996)). "Absent willful misconduct, the measure of damages for conversion is the fair market value of the property at the time and place of conversion." *Merchant v. Peterson*, 38 Wn. App. 855, 858, 690 P.2d 1192 (1984). Fair market value is "the value for which the property could have been sold in the course of a voluntary sale between a willing buyer and a willing seller, taking into account the use to which the property is adapted or could reasonably be adapted." *Id.* at 859.

¶16 The unlawful impoundment of a vehicle may be an unjustified, willful interference with another's property sufficient to constitute conversion. Under the common law, a person whose vehicle is unlawfully impounded is not required to seek repossession of such vehicle but may, instead, seek monetary damages. *Wash. State Bank v. Medalia Healthcare LLC*, 96 Wn. App. 547, 554, 984 P.2d 1041 (1999) (in a conversion action, the plaintiff "is under no obligation to take back the converted property rather than seek monetary recovery"). This common law cause of action and its remedies are available to Potter unless the legislature clearly expressed its intent to abrogate the common law by making the redemption procedures set forth in RCW 46.55.120 the exclusive remedy for unlawful impoundments.

C. RCW 46.55.120 is not the exclusive remedy for unlawful impoundments and, therefore, does not abrogate the common law claim of conversion

¶17 If a remedy provided by a statute is exclusive, the statute implicitly abrogates all common law remedies within the scope of the statute. To determine whether a statutory remedy is exclusive, the court must first examine the language and provisions of the statute in question. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 54, 821 P.2d 18 (1991). A statute may include an exclusivity provision. *Id.* at 62. However, the absence of such an exclusivity provision "does not defeat the case for preemp-

tion." *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 853, 774 P.2d 1199, 779 P.2d 697 (1989). If the language of the statute is inconclusive, the court may look to other manifestations of legislative intent. *Wilmot*, 118 Wn.2d at 54.

¶18 In *Wilmot*, this court addressed whether an employee may maintain a tort action for wrongful discharge in violation of public policy independent of the statutory remedy for retaliatory discharge. *Id.* at 51. The court held the statutory remedy was not exclusive because the statute lacked an express statement declaring the exclusivity of the statutory remedy and restored jurisdiction to the superior court to hear the claim in the event the agency director failed to find a statutory violation, the damages available under the statutory remedy were inadequate, and the common law cause of action for retaliatory discharge predated the statutory right. *Id.* at 55-62. Following this analysis, we consider whether the statute in question contains an express statement of exclusivity, the statutory language, and other expressions of legislative intent.

1. RCW 46.55.120 does not contain an exclusivity provision

¶19 The first consideration in determining the exclusivity of a statute is whether the statute contains an exclusivity clause. *Wilmot*, 118 Wn.2d at 62. In *Wolf v. Scott Wetzel Services, Inc.*, 113 Wn.2d 665, 668, 782 P.2d 203 (1989), we addressed the question of whether the Industrial Insurance Act (IIA), Title 51 RCW, bars an employee from bringing a claim for wrongful delay or termination of benefits. We determined the IIA was the exclusive remedy in that case because the statute included language of exclusivity, directly applied to the type of harm suffered, and provided a remedy for such harm. *Wolf*, 113 Wn.2d at 673-75.

¶20 RCW 46.55.120 lacks an express statement declaring it to be the exclusive remedy for unlawful impoundments. If the legislature intended RCW 46.55.120 to be the sole method of challenging an impoundment and the

sole remedy for an unlawful impoundment, it could have explicitly stated its intent. *Wilmot*, 118 Wn.2d at 62 ("[h]ad the Legislature intended the statute to be exclusive it would have been very simple to have expressly said so"); *see, e.g.*, RCW 7.71.030(1) ("[t]his section shall provide the exclusive remedy for any action taken by a professional peer review body of health care providers"); RCW 51.04.010 (providing a remedy for injured workers "to the exclusion of every other remedy, proceeding or compensation" and expressly abolishing all "civil causes of action for such personal injuries"); RCW 77.36.040(1) ("[t]hese damages shall comprise the exclusive remedy for claims against the state for damages caused by wildlife"). In the absence of an express statement declaring a remedy to be exclusive, we require clear evidence that the legislature intended to abrogate the common law. *In re Parentage of L.B.*, 155 Wn.2d 679, 695 n.11, 122 P.3d 161 (2005).

2. The language of RCW 46.55.120 does not indicate that the legislature intended the redemption procedures to be the exclusive remedy for unlawful impoundments

¶21 In the absence of an explicit statement of exclusivity, we examine the language and provisions of a statute to determine whether the legislature intended a statutory remedy to be exclusive. *Wilmot*, 118 Wn.2d at 54. In this case, the language of RCW 46.55.120 does not clearly indicate the procedures provided therein are the exclusive remedy for unlawful impoundments. The WSP points to language in the statute regarding how a vehicle may be redeemed, who may redeem a vehicle, the grant of jurisdiction to municipal and district courts, and the determination of liability and waiver.

¶22 The WSP argues the statute contains language of exclusivity. The statute begins by allowing vehicle redemption to occur "only under the following circumstances." RCW 46.55.120(1). But, by its plain language, the statute applies only to redemption. "Vehicles . . . that are

impounded by registered tow truck operators . . . may be *redeemed* only under the following circumstances." *Id.* (emphasis added). RCW 46.55.120 creates a statutory right of redemption by which an impounded vehicle may be reclaimed by paying all towing, removal, and storage fees.[9] RCW 46.55.120(1)(a), (e). A statutory right of redemption is a distinct and separate remedy from the common law action of conversion. In essence, redemption is a right, generally created by statute, to regain possession of property that is lawfully in another's possession.[10] In contrast, conversion is a common law tort action to recover the fair market value of property unjustifiably possessed by another. *In re Langham,* 153 Wn.2d at 564. Thus, the statute provides a procedure by which a vehicle owner can regain possession of his or her vehicle. It does not, on its face, apply to instances where a vehicle has already been sold at an auction and the previous owner is seeking damages for the value of the vehicle rather than repossession.[11]

¶23 The WSP also argues the statute should be construed broadly because it applies to everyone. The statute applies to "[a]ny person seeking to redeem an impounded vehicle." RCW 46.55.120(2)(b). Again, Potter did not seek to redeem his vehicle, so the statute does not apply.

¶24 The WSP also argues the determination of the lawfulness of an impoundment is granted to district and municipal courts. However, the jurisdiction conferred to

---

[9] If the impoundment is determined to be unlawful, the vehicle owner is not responsible for the towing, removal, and storage fees. RCW 46.55.120(1)(e).

[10] "[R]edemption" is "[t]he act or an instance of reclaiming or regaining possession by paying a specific price." BLACK'S, *supra,* at 1304. A number of statutes include a right of redemption. *See, e.g.,* RCW 6.23.010 (redemption of real property); RCW 62A.9A-621 (redemption of collateral subject to a security interest); RCW 46.55.120 (redemption of an impounded vehicle).

[11] The dissent makes much of the fact that the statute states that vehicles "may be redeemed only under the following circumstances" as evidence that the legislature intended that this hearing be the exclusive remedy. Dissent at 90; RCW 46.55.120(1). The problem with that analysis is the statute applies only to the remedy of redemption. It does not, however, limit the remedy just to redemption. Remedies, like trover, are not applicable in this statute.

municipal and district courts to determine "issues involving all impoundments" is not exclusive. RCW 46.55.120(2)(b). While this phrase could be construed as granting jurisdiction to district courts for all actions involving impoundments, it does not strip a superior court, as a court of general jurisdiction, of its jurisdiction to entertain other claims that may include determinations of the validity of an impoundment. For example, a determination of the validity of an impoundment is imperative when deciding whether evidence discovered during an inventory search is admissible in a criminal case. *See, e.g., State v. Houser*, 95 Wn.2d 143, 147, 622 P.2d 1218 (1980) (evidence discovered during inventory search is inadmissible if the impoundment was unlawful; State must show reasonable cause to justify an impoundment); *State v. Peterson*, 92 Wn. App. 899, 902-05, 964 P.2d 1231 (1998) (considering whether evidence discovered during an inventory search was admissible based on the validity of an impoundment). The validity of an impoundment may be challenged by means other than following the redemption procedures set forth in RCW 46.55.120.

¶25 The WSP also argues the statute establishes the exclusive method of determining liability for an impoundment. The WSP argues liability is determined under the statute regardless of whether a hearing is held. The WSP correctly observes RCW 46.55.120 provides a mechanism for determining liability for fees, costs, and loss of use damages during a hearing. Additionally, if a hearing is not properly requested, "the registered owner is liable for any towing, storage, or other impoundment charges permitted under this chapter." RCW 46.55.120(2)(b). However, the statute is silent as to whether the impounding authority may be liable for damages under other legal theories, such as conversion.

¶26 The WSP also asserts that, by waiving the right to a hearing, the owner waives the right to challenge the impoundment. However, the statute applies only to a waiver of a right to a hearing under RCW 46.55.120. It does not, by its terms, state a person waives the right to bring all

causes of action based on the impoundment. RCW 46.55-.120(2)(b) (if a redemption hearing is not properly requested, "the right to a hearing is waived"). By waiving the right to the redemption hearing, the owner becomes liable for the fees and costs of an impoundment. However, there is no indication that the owner cannot recover the fair market value of the car in a subsequent conversion action.

¶27 In conclusion, we find the language of the statute provides no clear evidence that the legislature intended the redemption statute to be the exclusive remedy for unlawful impoundments.

3. Other manifestations of legislative intent are inconclusive as to whether the legislature intended RCW 46.55.120 to be the exclusive remedy for unlawful impoundments

¶28 In the absence of statutory language or provisions clearly establishing the exclusivity of a remedy, we may look to "other manifestations of legislative intent" to determine whether the legislature clearly intended a statute to be an exclusive remedy. *Wilmot*, 118 Wn.2d at 54. In *Wilmot*, we considered, among other things, the comprehensiveness of the remedy provided by the statute, the purpose of the statute, and the origin of the statutory right. *Id.* at 61-65. Considering each of these factors in this case, we find there is no clear indication that the legislature intended the redemption procedures of RCW 46.55.120 to be the exclusive remedy for unlawful impoundments.

¶29 *Remedies.* The adequacy or comprehensiveness of a statutory remedy is a factor to consider when determining whether the legislature intended for a statutory remedy to be exclusive. *Wilmot*, 118 Wn.2d at 61. In *Wilmot*, the court found the damages provided under the retaliatory discharge statute were inadequate because the statute did "not clearly authorize all damages which would be available in a tort action." *Id.* The statutory remedy was " 'all appropriate relief including rehiring or reinstatement of the employee with back pay.' " *Id.* at 55 (quoting RCW

51.48.025(4)). The court reasoned " 'all appropriate relief' " was ambiguous and, thus, may or may not include emotional distress damages, which would be available under the common law. *Id*. at 61. The court also noted the specific damages listed in the statute were equitable in nature, thus adding to the uncertainty as to whether the legislature intended the statutory remedy to be exclusive. *Id*.

¶30 The WSP argues the statute's provisions manifest the legislature's intent to provide an exclusive statutory remedy. However, the fact the legislature provided *a* statutory remedy does not necessarily evidence a clear intent to create an *exclusive* remedy. *Id*. at 53. RCW 46.55.120 provides some relief when a vehicle is unlawfully impounded. The statutory remedies are limited to fees, costs, and reasonable loss of use damages. RCW 46.55-.120(3)(e). The remedy is even more limited in cases, like Potter's, where an improper impoundment arose from a DWLS violation. Where the DWLS impoundment is improper but conducted in good faith reliance on department records, the statute limits WSP's liability to fees and costs. *Id*.; *Honda Accord*, 117 Wn. App. at 521 (loss of use damages unavailable when agency relies in good faith on driving records). Finally, for all impoundments, whether lawful or unlawful, the owner may request the surplus proceeds available after the vehicle is sold at an auction and the tow truck operator's lien is satisfied. RCW 46.55.130(2)(h).

¶31 Potter argues the statutory remedies are inadequate and incomprehensive because they do not provide the same damages as a conversion action. Generally, the measure of damages for conversion is the fair market value of the property converted. *Merchant*, 38 Wn. App. at 858. An owner is also entitled to loss of use damages for the period of time during which the owner was wrongfully deprived of the converted property. *Dunn v. Guar. Inv. Co.*, 181 Wash. 245, 248, 42 P.2d 434 (1935). Finally, consequential damages may be available in some circumstances. *Dennis v. Southworth*, 2 Wn. App. 115, 124, 467 P.2d 330

(1970) (allowing damages for the loss of profits or reasonable rental value of converted property).

██ ██ ¶32 The redemption statute does not provide adequate or comprehensive relief for the conversion of a vehicle for a number of reasons. First, while good faith limits the liability of the impounding agency under the statute, RCW 46.55.120(3)(e), good faith is not a defense to conversion, *Paris American Corp. v. McCausland*, 52 Wn. App. 434, 443, 759 P.2d 1210 (1988). Thus, if a conversion action is brought following a DWLS impoundment, loss of use damages would be available under the common law, but not under the statute, assuming a good faith reliance on driving records.[12] Second, for people who do not attempt to, or are unable to, redeem their vehicles, the remedy is even more inadequate.[13] Once a vehicle is sold at an auction, the owner has the right to claim any surplus proceeds for up to one year. RCW 46.55.130(2)(h). Under conversion, the owner would receive the fair market value of the vehicle. *Merchant*, 38 Wn. App. at 858. The auction value of a car, after satisfaction of a tow truck operator's lien, is an inadequate remedy when compared to the fair market value of the vehicle. In short, the inadequacy of the remedy

---

[12] In *Impoundment of Chevrolet*, we remanded one of the vehicle owner's claims to the district court to determine the appropriate amount of damages for loss of use, despite the fact that the officer appeared to have relied in good faith on the department's driving records. 148 Wn.2d at 151-52, 162. While this appears to be inconsistent with the statute, the driver in *Impoundment of Chevrolet* was taken into custody on an unrelated outstanding warrant, not for the DWLS violation. *Id.* at 151. A vehicle may be impounded when a driver is arrested for a DWLS violation or in any circumstance where the driver is arrested on another matter and taken into custody. RCW 46.55.113(1), (2)(d). If the vehicle was impounded because of the arrest for the outstanding warrant, the good faith exception would not have applied. However, the case dealt with an impoundment for a DWLS violation, so it is unclear on what basis the vehicle was actually impounded. Additionally, the WSP did not raise the defense of good faith reliance on the driving records to avoid paying the loss of use damages. Thus, the remedy ordered in *Impoundment of Chevrolet* does not compel us to ignore the plain meaning of the exception for loss of use damages.

[13] We recognize a vehicle should not be auctioned if a hearing under the statute is timely sought and the court rules the impoundment was unlawful. RCW 46.55.120(3)(a) (requiring the court to provide notice of the hearing request to the tow truck operator); WAC 308-61-168(1) (prohibiting a towing company from auctioning a vehicle before an impoundment hearing is completed).

provided by the redemption statute is evidence that the legislature did not intend the statute to be the exclusive remedy for an unlawful impoundment.

¶33 *Purpose.* When determining whether a statute is exclusive, the court should strive to uphold the purpose of the statute. *Wash. Water Power Co.*, 112 Wn.2d at 855; *Wilmot*, 118 Wn.2d at 66. The legislative history of the challenged statute should be reviewed to determine whether allowing a common law action to proceed would frustrate the legislative purpose of the statute. *Wash. Water Power Co.*, 112 Wn.2d at 854; *Wilmot*, 118 Wn.2d at 63-64.

¶34 In *Washington Water Power Co.*, we determined the Washington product liability act (WPLA), chapter 7.72 RCW, is the exclusive remedy for product liability claims. 112 Wn.2d at 853. Although WPLA did not contain an express preemption clause, the court determined, "[c]lear statutory language and corroborative legislative history leave no doubt about the WPLA's preemptive purpose." *Id.* The scope of WPLA is broadly defined so as to include " 'any claim or action brought for harm caused by the . . . product.' " *Id.* (quoting RCW 7.72.010(4)). Furthermore, the legislative history indicated the purpose of the statute was to eliminate common law remedies and provide a single cause of action. *Id.* at 854. The court reasoned that allowing common law claims would defeat the purpose of WPLA and, essentially, "render[ ] the statute a nullity." *Id.* at 856.

¶35 Unlike *Washington Water Power Co.*, allowing a common law cause of action for conversion does not defeat the purpose of the statute in this case. WSP asserts the purpose of RCW 46.55.120 is to limit the government's liability for unlawful impoundments. However, while language in the statute addresses the extent of the government's liability, there is no evidence in the legislative history of the statute suggesting the redemption statute was intended to limit the government's liability.

¶36 RCW 46.55.120 was first adopted in 1985. LAWS OF 1985, ch. 377, § 12. RCW 46.55.120 was based, in part, on previous statutes dealing with the redemption of aban-

doned vehicles (Laws of 1979, 1st Ex. Sess., ch. 178, § 4) and vehicles impounded on private property (Laws of 1983, ch. 274, § 4). The predecessors of RCW 46.55.120 were passed to satisfy due process concerns. 1979 Final Legislative Report, 46th Wash. Leg., 1st Ex. Sess., at 72; 1983 Final Legislative Report, 48th Wash. Leg., at 298-99.

█ ¶37 In 1998, language was added to RCW 46.55.120 regarding impoundments for DWLS violations. Laws of 1998, ch. 203, § 5. The new requirements for DWLS impoundments were added to protect public safety due to the increased risk of accidents posed by people driving with suspended licenses. Laws of 1998, ch. 203, § 1. Additionally, the legislature determined, "[e]xisting sanctions are not sufficient to deter or prevent persons with a suspended or revoked license from driving." *Id.* The statute was intended to "provide an immediate consequence which will increase deterrence and reduce unlawful driving by preventing a suspended driver access to that vehicle." *Id.* In light of this legislative history, it appears the purpose of RCW 46.55.120 is, in relevant part, to protect the public, deter DWLS violations, and provide due process when a vehicle is impounded. Allowing a common law action in conversion for the unlawful impoundment of a vehicle does not interfere with protecting the public, deterring DWLS violations, and providing due process.

██ ¶38 *Origin of the statutory right.* In determining whether a statute is exclusive, the court also considers whether the statute creates a new right or whether the right preexisted the statute at common law. *Wilmot,* 118 Wn.2d at 62. Where the common law remedy predates the statutory remedy, the court infers the statutory remedy is cumulative, not exclusive. *Id.* at 63. In this case, the modern law of conversion was first recognized in 1841. Restatement (Second) of Torts § 222A cmt. a (1965). The statutory vehicle redemption procedures, in their earliest form, were passed in 1979. Laws of 1979, 1st Ex. Sess., ch. 178, § 4. Consequently, the common law remedy of conversion predated the statutory redemption procedures, which suggests the impound statute is not exclusive.

## IV. CONCLUSION

¶39 Potter may bring a conversion action against the WSP for unlawfully impounding his vehicles. In the absence of an exclusivity statement or clear evidence of the legislature's intent to abrogate the common law, we hold the redemption procedures outlined in RCW 46.55.120 are not the exclusive method by which an unlawful impoundment may be challenged. We reverse the trial court and remand for proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, CHAMBERS, and STEPHENS, JJ., concur.

¶40 MADSEN, J. (dissenting) — Contrary to the majority's conclusion, the plain language of RCW 46.55.120 establishes that the legislature intended that the procedures and remedies in the statute are exclusive. Accordingly, the court should hold that no cause of action for conversion may be brought based on the Washington State Patrol's impoundment of a vehicle.

¶41 At the outset, it is important to bear in mind that, regardless of this court's invalidation of the former state patrol regulation mandating certain impounds, *see In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 60 P.3d 53 (2002), not all impounds that occurred under the rule are invalid. As I explained in my dissent in the original opinion in this case, in each individual case there must be a determination whether the particular impoundment at issue would have occurred in any event in the exercise of the officer's discretion. *See Potter v. Wash. State Patrol*, 161 Wn.2d 335, 344-46, 166 P.3d 684 (2007) (Madsen, J., dissenting). If impoundment would have been proper in the exercise of sound discretion, then no statutory violation occurred regardless of the invalid rule. The impoundment itself was valid. Moreover, because the determination of whether impoundment would have been proper in the

exercise of discretion requires a fact specific inquiry in each case, a class action is an improper vehicle for suit. *Id.* at 346-49 (Madsen, J., dissenting).

¶42 The specific issue on which the court granted reconsideration is whether the statutory procedures for determining the validity of an impoundment and the statutory remedies available are exclusive and preclude a common law tort claim for conversion. Because the majority unfortunately fails to give effect to the legislature's clear intent, it concludes the statutes are not exclusive. The majority's conclusion not only ignores the legislature's intent, it affirmatively conflicts with the statutes.

¶43 A statute precludes a common law tort claim if the legislature intended the statute to be exclusive. *See generally Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 61-62, 821 P.2d 18 (1991). RCW 46.55.120(1), which governs redemption of impounded vehicles, begins by stating, "[v]ehicles . . . that are impounded" because the driver is driving with a suspended or revoked license *"may be redeemed only under the following circumstances."* (Emphasis added.) The statute also provides that "[a]ny person seeking to redeem an impounded vehicle . . . has a right to a hearing in the district or municipal court for the jurisdiction in which the vehicle was impounded to contest the validity of the impoundment." RCW 46.55.120(2)(b) (emphasis added). Thus, by its plain language, this statute provides that *only* the provisions in the statute may be employed to redeem an impounded vehicle and validity of an impoundment is to be determined at the hearing provided for in the statute.

¶44 The statute precludes a common law tort claim because it plainly provides that its procedures and remedies are the only recourse for an invalid impoundment. *See Wilmot*, 118 Wn.2d at 55-58. The majority dismisses the language showing exclusivity, however, saying that the statute is limited to redemption. This reasoning flies in the face of the comprehensive statutory scheme and its indi-

vidual provisions. The majority's analysis virtually ignores the significance of the statutory language.

¶45 First, an owner can redeem a vehicle by paying costs, but this does not prevent the owner from also challenging the validity of the impoundment. Every owner has the right to seek a hearing under RCW 46.55.120(2)(b), at which the validity of the impoundment can be determined. If the impoundment was invalid, the owner is entitled to recovery of redemption costs and damages for loss of use, as explained below. Second, the legislature clearly sought to provide an expedient resolution to impoundments, granting the owner swift recourse to recovery of his vehicle, thus protecting his possessory interests. At the same time the legislature established consequences for not utilizing the statutory procedures. The statutes are detailed and comprehensive, and address the varying circumstances that may develop with respect to challenges to impoundment of a vehicle and recovery of the vehicle, costs, and damages associated with impoundment, or with respect to the failure to utilize the statutory procedures.

¶46 If Mr. Potter had utilized the impoundment proceedings, he could have regained his vehicle. Moreover, the broad remedies available under the statute would have assured that Mr. Potter was "made whole" through the statutory procedures had he availed himself of them. At the conclusion of a hearing to determine the validity of impoundment, the court must decide whether the impoundment was proper and who is responsible for payment of fees. RCW 46.55.120(3)(c). If the impoundment was unlawful, then the registered and legal owners of the vehicle bear no impoundment, storage, or towing fees; any security must be returned or discharged as appropriate; and the agency or person authorizing the impoundment is responsible for these costs.[14] RCW 46.55.120(3)(e). In addition, judgment

---

[14] If impoundment results from an alleged violation of RCW 46.20.342 or RCW 46.20.345 and the impoundment is determined to be improper, then the law enforcement officer who directed impoundment and his or her government employer will not be liable for damages if the officer relied in good faith and

must be entered in favor of the registered and legal owners of the vehicle for the filing fee required for the impound hearing as well as reasonable damages for the loss of use of the vehicle. *Id.*

¶47 The provisions that come into play if the owner does not utilize the statute underscore the exclusivity of the statute. If the owner does not timely challenge an impound, "the right to a hearing *is waived* and the registered owner *is liable for* any towing, storage, or other impoundment charges." RCW 46.55.120(2)(b) (emphasis added). RCW 46.55.120(2)(b) thus imposes mandatory liability for impound costs if the owner does not seek a hearing—the owner "is liable" for these costs if the hearing is waived. RCW 46.55.120(2)(b). Further, if the owner fails to pay costs and recover the vehicle after a hearing is waived, the vehicle may be sold at auction or for scrap. RCW 46.55.130. If the vehicle is sold at auction, the proceeds will apply to costs, with any surplus available to the registered owner upon the filing of a valid claim within one year from the date of auction. RCW 46.55.130(2)(h).

¶48 The legislature has thus set out detailed provisions for recovery of an impounded vehicle and the determination of liability of costs of impoundment, towing, and storage. The legislature has clearly laid out what happens if the owner fails to request a hearing or fails to pay costs and recover his vehicle, including ultimate sale of the vehicle to cover fees and costs.

¶49 The majority ignores the detailed, comprehensive provisions that apply to owners who do utilize the statutory procedures and provisions that apply to owners, like Mr. Potter, who fail to follow the statutory procedures. Contrary to the statute's plain explanation of what is to happen if the owner does not conform to the statute's requirements, the majority allows the owner to completely ignore the statute and seek damages in a tort action. The majority permits a tort claim despite the legislature's plain direction that

without gross negligence on the records of the Department of Licensing. RCW 46.55.120(3)(e).

validity of the impoundment is to be determined in the hearing provided for by the statute, responsibility for costs and fees is to be determined according to the statute's provisions, recovery of the vehicle is to be obtained through the statutory provisions, and, if the statute is not followed, disposition of the vehicle may result—although by statute the owner is still entitled to claim any amount received from sale that exceeds the costs and fees for which the owner is liable under the statute.

¶50 Contrary to the majority's overly narrow approach to determining whether a statute is mandatory and exclusive, a statute does not have to provide for every remedy imaginable. The majority incorrectly suggests that the legislature's failure to provide for all remedies, including trover, means the statute is not exclusive. Majority at 82 n.11. The remedies that are provided in the form of redemption procedures and remedies are comprehensive and more than adequate to give relief, and show that the legislature intended the statute to be exclusive. The majority not only ignores the clear exclusivity of the statute, it permits a tort claim that is particularly incompatible with the statute. An example shows why. In the statute, as explained, the legislature has directed that the vehicle may ultimately be sold at auction to pay for costs of impoundment, towing, and storage. The disposition of the vehicle is authorized *whether or not the initial impoundment was proper* because the owner has waived the right to a hearing at which responsibility for the costs would have been determined.

¶51 The majority, in contrast, permits the owner to ignore the statute and maintain a conversion action, which is an action for the " '*unjustified*, willful interference with a chattel which deprives [the] person entitled to the property of possession.' " Majority at 78-79 (internal quotation marks omitted) (quoting *In re Marriage of Langham*, 153 Wn.2d 553, 564, 106 P.3d 212 (2005)). But by the statute's express terms, however, sale of the vehicle is not unjustified; rather, by statute the owner waived the right to a hearing by not timely seeking a hearing and is liable for

costs and fees for which the vehicle may be sold. The majority's authorization of a conversion action in these circumstances not only ignores the exclusivity of the statute's provisions, it affirmatively contravenes the statutory provisions.

¶52 If, in contrast,. the owner seeks a hearing and the court determines that the impoundment was valid, the majority decision would apparently permit the owner to pursue a conversion claim nevertheless. But the court has jurisdiction to determine the validity of the impoundment and once it has made that determination, any further action on the matter is inconsistent with the statute's provisions.

¶53 To the extent the majority's approach is driven by policy concerns, they are the province of the legislature and the legislature has clearly protected the owner's interests. The statute establishes that if the owner does pursue the hearing authorized by the statute in a timely manner, the owner can recover the vehicle and, if the impoundment was invalid, can do so without liability for any costs and fees, and in fact can recover loss of use damages.

¶54 Finally, the majority also says that although the statute states that it applies to all who seek to redeem their vehicles, it does not apply to Mr. Potter because he did not seek to redeem his vehicle. *Id.* at 82. This begs the question. A common law cause of action should not be viable merely because an individual who should have followed a statute did not do so.

¶55 The plain language of the statute and the comprehensiveness of the remedies available show that the legislature intended the statutory procedures and remedies to be exclusive. *See Wilmot*, 118 Wn.2d at 60-61.

¶56 I would hold that a conversion action cannot be sustained and summary judgment in favor of the Washington State Patrol should be affirmed.

Owens and J.M. Johnson, JJ., concur with Madsen, J.